UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRITINA GARCIA,

       Plaintiff,

v.                                                                                 Civil Case No. 19-11673
                                                                                Honorable Linda V. Parker
BEAUMONT HEALTH and
RACHEL LUCA,

       Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND COMPLAINT

This lawsuit arises from Plaintiff's employment as a Respiratory Therapist with Defendant Beaumont Health ("Beaumont"). In a Complaint filed June 6, 2019, Plaintiff alleges that Beaumont and Plaintiff's co-worker, Rachel Luca ("Luca")(collectively "Defendants"), violated Title VII of the Civil Rights Act of 1964, by engaging in sex discrimination (Count I), sexual orientation discrimination (Count II), and retaliation (Count III). (Compl., ECF No. 1.) The matter is presently before the Court on Plaintiff's motion to file an amended complaint to add sexual harassment and retaliation claims against Defendants under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"). (Pl.'s Mot., ECF No. 19.) The motion has been fully briefed. (ECF Nos. 20, 21.)

## I. Factual and Procedural Background[1]

Plaintiff is an openly bisexual women, who began working as a Respiratory Therapist at Beaumont in May 2011. (Compl. ¶ 8, ECF No. 1 at Pg ID 2.) Luca is Plaintiff's co-worker. (*Id.* ¶ 4, Pg ID 2.) After learning that Plaintiff is bisexual, Luca began making sexually harassing comments to her (*Id.* ¶ 9, Pg ID 2-3.) On one occasion, Luca put her hand down Plaintiff's shirt, pinched Plaintiff's nipple, and pulled Plaintiff's breast out of her bra cup. (*Id.* ¶ 10, Pg ID 3.)

Plaintiff reported Luca's conduct to Plaintiff's supervisor, Antoinette Carroll, who instructed Plaintiff and Luca not to discuss Plaintiff's claims or Plaintiff's report. (*Id.* ¶ 11, Pg ID 3.) Luca, however, spoke to other employees about both and called Plaintiff a liar. (*Id.* ¶ 12, Pg Id 3.) Plaintiff reported this to Carroll and the Director of Respiratory Care, Jean Aphram, who assured Plaintiff that human resources would be contacted. (*Id.* ¶ 13, Pg ID 3.)

On or about September 2, 2018, Luca told a resident nurse that Plaintiff had lied and concocted a story to get Luca fired. (*Id.* ¶ 14, Pg ID 3.) Plaintiff claims that because she must work closely with the resident nurses, "this harassing and retaliatory behavior from Defendant Luca directly impacted Plaintiff's ability to do her job." (*Id.*)

---

[1] Plaintiff alleges identical background facts in her proposed amended complaint. (*See* Pl.'s Mot. Ex. 3, ECF No. 19 at Pg ID 79-86.)

Plaintiff reported Luca's conduct again, this time to the Human Resources Director, Kevin Brancaleone, and Jose Rivera. (*Id*. ¶ 15, Pg ID 3.) Luca continued to talk about Plaintiff's report of sexual harassment and to call Plaintiff a liar. (*Id*. ¶ 16, Pg ID 3.)

On September 24, 2018, Plaintiff scheduled a doctor's appointment for depression and sought counseling. (*Id*. ¶ 17, Pg ID 3.) Two days later, she began a period of medical leave and started taking an anti-depressant and anti-anxiety medication. (*Id*.) Plaintiff returned to work on October 3, 2018, after receiving her doctor's approval. (*Id*.)

Upon returning to work, Plaintiff requested not to work at the same time as Luca. (*Id*. ¶ 19, Pg ID 4.) This resulted in Plaintiff being frequently deprived of the opportunity to act as Charge Therapist, a position with a higher rate of pay. (*Id*.) On October 8, 2018, Carroll told Plaintiff that she had not yet heard back from human resources regarding Plaintiff's complaints and that attention would be paid when scheduling Plaintiff and Luca. (*Id*. ¶ 20, Pg ID 4.)

On October 24, 2018, human resources requested a meeting with Plaintiff; however, a meeting had not occurred as of the June 6, 2019 filing of this lawsuit. (*Id*. ¶ 21, Pg ID 4.) On November 11, 2018, Plaintiff was scheduled as Charge Therapist while Luca also was scheduled to work. (*Id*.) Plaintiff was not able to

3

do her job "[d]ue to Defendant Luca's continued retaliation against Plaintiff[.]" (*Id.*)

Luca has not responded to Plaintiff's Complaint, despite being personally served with the Summons and a copy of the pleading on July 26, 2019. (*See* ECF No. 5.) Plaintiff moved for and obtained a Clerk's Entry of Default as to Luca on August 30, 2019. (ECF Nos. 9, 10.) Plaintiff then filed a motion for a default judgment against Luca. (ECF No. 12.) Beaumont objected to the motion, noting that Luca, as Plaintiff's co-worker, cannot be held liable under Title VII. (ECF No. 14.) At the scheduling conference before the Court on October 3, 2019, Plaintiff's counsel agreed to withdraw the motion for default judgment, indicating that counsel may move to amend Plaintiff's complaint to plead a proper claim against Luca. That motion is now before the Court.

## II. Applicable Standard

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend is "freely" granted "when justice so requires." *See* Fed. R. Civ. P. 15(a). The United States Supreme Court has advised that a plaintiff should be allowed the opportunity to test a claim on the merits if the facts and circumstances underlying the claim suggest that it may be a proper subject of relief. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, the Court further instructed that a motion to amend a complaint should be denied if the amendment is brought in bad faith or for dilatory

4

purposes, results in undue delay or prejudice to the opposing party, or would be futile. *Id.* An amendment is futile when the proposed amendment fails to state a claim upon which relief can be granted and thus is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

### III. Applicable Law and Analysis

As an initial matter, Plaintiff's proposed First Amended Complaint continues to refer to "Defendants" in the claims brought under Title VII. Plaintiff, however, has not refuted Beaumont's assertion that she cannot state viable Title VII claims against a co-worker, and she does not allege facts suggesting that Luca was anything but a co-worker. Plaintiff's amended pleading may not continue to assert Title VII claims against Luca. *See Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997) (holding that "an individual employee/supervisor, who does not qualify as an 'employer,' may not be held personally liable under Title VII.").

#### A. Sexual Harassment under the ELCRA (Count IV)

In this proposed count, Plaintiff alleges that she was sexually harassed by Luca. (Proposed Am. Compl. ¶¶ 40-46, ECF No. 19 at Pg ID 84.) It is not clear whether Plaintiff is attempting to bring this claim against Luca, only, or also against Beaumont for failing to respond to Plaintiff's complaints concerning

5

Luca's harassment. To the extent the claim is against Luca, the claim is futile. To the extent the claim is also against Beaumont, the Court finds that Plaintiff should be able to amend her pleading. *See Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 916 (Mich. 2000) (holding that an employer can be liable for a co-worker's sexual harassment of the plaintiff "if the employer failed to take prompt and adequate remedial action after having been reasonably put on notice of the harassment.").

The ELCRA prohibits "employers" from discriminating on the basis of sex. *Id*. § 37.2202(1)(a). The statute includes sexual harassment in its definition of discrimination. Mich. Comp. Laws § 37.2103(i). An "employer" is "a person who has 1 or more employees, and includes an agent of that person." *Id*. § 37.2201(a). An "agent" is someone "to whom an employing entity delegates supervisory power and authority to act on its behalf" and are "distinguished from coemployees, subordinates, or coworkers who do not have supervisory powers or authority[.]" *Elezovic v. Bennett*, 731 N.W.2d 452, 458 (Mich. Ct. App. 2007) ("*Elezovic II*"). Nothing in Plaintiff's Complaint or proposed amended pleading suggests that Luca was an agent of Beaumont. Plaintiff in fact expressly pleads that Luca was a co-worker.

Plaintiff seems to be arguing that she can state a sexual harassment claim against Luca under Section 37.2701 of the statue. This section prohibits two or more persons from conspiring to, or *a person* from "[r]etaliat[ing] or

6

discriminat[ing] against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." Mich. Comp. Laws § 37.2701(a). These "anti-retaliation provisions," *see MacDonald v. UPS*, 430 F. App'x 453, 463 (6th Cir. 2011), do not expand the category of defendants that can be found liable for sexual harassment. If the Michigan Supreme Court interpreted the ELCRA this way, it would have concluded that the individual named as a defendant in *Elezovic v. Ford Motor Company*, 697 N.W.2d 851 (Mich. 2005), was liable for sexual harassment without remanding the matter to determine whether the individual qualified as an "agent." *Id.* at 863; *see also Elezovic II*, 731 N.W.2d at 459-60 (explaining why an individual who is an agent of the employer is treated differently than other individuals with respect to liability); *Rymal v. Baergen*, 686 N.W.2d 241, 253, 263 (Mich. Ct. App. 2004) (although individual defendant could not be held liable for hostile work environment sexual harassment, he could be held liable for retaliation under the ELCRA).

In short, Plaintiff cannot state a viable sexual harassment claim against Luca independent of her retaliation claim.

### B. Retaliation under the ELCRA (Count V)

As set forth in the preceding section, the ELCRA's anti-retaliation provision prohibits retaliatory conduct by "a person[.]" Mich. Comp. Laws § 37.2701. The statute defines a "person" as:

> an individual, agent, association, corporation, joint apprenticeship committee, joint stock company, labor organization, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, unincorporated organization, the state or a political subdivision of the state or an agency of the state, or any other legal or commercial entity.

*Id.* § 37.2103(g). As the Michigan Court of Appeals reasoned in *Rymal v. Baergen*, 686 N.W.2d 242 (Mich. Ct. App. 2004), because the Michigan legislature used different terms in the antidiscrimination provision, Mich. Comp. Laws § 37.2202 (an "employer") and the antiretaliation provision, *id.* § 37.2701 (a "person"), and because the statute defines a "person" as including an "individual," the legislature authorized individual liability for retaliatory acts. *Id.* at 254-55. Thus, Beaumont *and* Luca can be found liable under Section 37.2701.

To establish a claim under the ELCRA's anti-retaliation provision, a plaintiff must prove:

> (1) that the plaintiff engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.

*In re Rodriguez*, 487 F.3d 1001, 1011 (6th Cir. 2007) (citations omitted). "To establish a causal connection between the protected activity and the adverse employment action, a plaintiff must present evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" *Walcott v. City of Cleveland*, 123 F. App'x 171, 178 (6th Cir. 2005) (quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)) (additional citations omitted). The plaintiff's protected activity must have been a "significant factor" in the adverse action. *In re Rodriguez*, 487 F.3d at 1011.

What constitutes an adverse employment action depends upon the employment contact: "[W]hat might constitute an adverse employment action in one employment context might not be actionable in another employment context." *Chen v. Wayne State Univ.*, 771 N.W.2d 820, 839 (Mich. Ct. App. 2009) (citation omitted). "Nevertheless, regardless of the employment context, in order to be actionable, an employment action must be materially adverse to the employee— that is, it must be more than a mere inconvenience or minor alteration of job responsibilities." *Id.* (citing *Meyer v. Center Line*, 619 N.W.2d 182 (Mich. Ct. App. 2000)); *see also Vredevelt v. GEO Group, Inc.*, 145 F. App'x 122, 128 (6th Cir. 2005). Moreover, the adverse employment action "'must have an objective basis for demonstrating that the change is adverse, rather than the mere subjective

9

impressions of the plaintiff.' " *Vredevelt*, 145 F. App'x at 128 (quoting *Meyer*, 619 N.W.3d at 188).

Plaintiff pleads sufficient facts to state a viable ELCRA retaliation claim against Beaumont and Luca. The Michigan courts have held "that a supervisor's decision not to take action to stop harassment by co-workers in retaliation for an employee's opposition to a violation of the [ELCRA] can constitute an adverse employment action." *Meyer*, 619 N.W.2d at 189. "Where the harassment is sufficiently severe, a supervisor's failure to take action to respond can constitute a materially adverse change in the conditions of employment." *Id*. Clearly the actual harasser also can be liable for retaliation if his or her actions were in response to the plaintiff's opposition to a violation of the ELCRA.

## IV. Conclusion

The Court is **GRANTING IN PART AND DENYING IN PART** Plaintiff's motion to amend her complaint. **However**, the amended pleading may not include Title VII claims or an ELCRA sexual harassment claim against Luca. Plaintiff shall file an amended complaint consistent with this decision **within**

**fourteen (14) days** of this Opinion and Order.

    **IT IS SO ORDERED**.

                                                   s/ Linda V. Parker  
                                                 LINDA V. PARKER  
                                                 U.S. DISTRICT JUDGE

Dated: March 6, 2020