UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTINA GARCIA,

    Plaintiff,

v.

BEAUMONT HEALTH and RACHEL LUCA,

    Defendants.

Case No: 19-11673

District Judge Linda V. Parker

Magistrate Judge David R. Grand

/

Lisa C. Ward (P38933)
Law Offices of Lisa C. Ward, PLLC
Attorney for Plaintiff
4131 Okemos Road, Suite 12
Okemos, MI 48864
517-347-8102
lisacward@aol.com

Kienbaum Hardy Viviano Pelton
 & Forrest, P.L.C.
By: Eric J. Pelton (P40635)
    Shannon V. Loverich (P53877)
Attorneys for Defendant Beaumont Health
280 N. Old Woodward Avenue, Suite 400
Birmingham, Michigan 48009
(248) 645-0000
epelton@khvpf.com
sloverich@khvpf.com

/

## DECLARATION OF ANTOINETTE CARROLL

In accordance with 28 U.S.C. § 1746, Antoinette Carroll states the following:

1. I make this Declaration based on personal knowledge of the facts stated herein and based on Beaumont's records that are kept in the ordinary course of business. I am able to testify under oath if called upon to do so.

2. I am currently employed with Beaumont Health's Royal Oak Hospital as a Clinical Supervisor in Respiratory Care.

3. Respiratory Therapists are responsible for caring for patients with breathing or cardiopulmonary disorders throughout the hospital.

4. Respiratory Therapists are generally assigned to work in pairs in Royal Oak's 1,000-bed hospital, which is spread throughout four towers and approximately 35 floors.

5. Kristina Garcia worked as a Charge Therapist from approximately January 2017 until she voluntarily resigned from that role on February 28, 2019. Her resignation from Charge Therapist responsibilities is attached hereto at **Exhibit 1.** Ms. Garcia continues to be employed at the hospital as a Respiratory Therapist.

6. On the night of July 29, 2018, Kristina Garcia was working on the 9th floor of the hospital's North Tower. Rachel Luca was working on the 4th floor of the Central Tower. Colleen Kaye was working on the 3rd floor of the East Tower.

1

7. Prior to receiving Kristina Garcia's complaint about Rachel Luca, no one had ever lodged a complaint with Respiratory Care management about Ms. Luca engaging in sexually inappropriate conduct or communication.

8. I was shocked and concerned about the allegations that Ms. Garcia shared with me in our August 6, 2018 conversation. I wanted to make sure Ms. Garcia felt supported and throughout our conversation, I expressed my concern and support. Toward the end of our conversation, I asked Ms. Garcia to prepare a written statement of her complaint about Ms. Luca.

9. After receiving Ms. Garcia's verbal complaint, I consulted my manager Jean Aphram and a call was placed to Human Resources. The decided course of action was that I would investigate once I received Ms. Garcia's written complaint.

10. On August 8, 2018, I received Ms. Garcia's written complaint. I began the investigation into Ms. Garcia's written complaint by interviewing Colleen Kaye and Rachel Luca. I sought to be as objective as possible. I did not assume that Ms. Garcia's accusations had occurred.

11. I arranged these interviews in a manner so that Ms. Luca and Ms. Kaye would not be alerted to the fact I was investigating an employee complaint. First, I called Ms. Kaye and asked her to come to my office. I did not give Ms. Kaye any indication over the phone that I would be speaking to her about Ms.

2

Garcia's complaint. Immediately after interviewing Ms. Kaye, I contacted Ms. Luca and asked her to come to my office.

12. In my February 20, 2020 deposition, I was asked if I believed Ms. Garcia's allegations. I truthfully responded that I "kind of" believed Ms. Garcia when she reported her complaint and that I took her complaint seriously. I was not asked whether I believed Ms. Luca or Ms. Kaye. After conducting the investigation, I also believed Ms. Luca and Ms. Kaye. Ms. Kaye was identified by Ms. Garcia as the only witness to the event, and I had no reason to doubt Ms. Kaye's honesty or integrity. It also seemed unlikely that an assault of this nature could occur in small storage room without Ms. Kaye witnessing it, and without Ms. Garcia responding in any significant manner. Both Ms. Luca and Ms. Kaye appeared honest and truthful when they were answering my questions. The totality of my investigation led me to conclude that the assault reported by Ms. Garcia could not be substantiated.

13. On Monday, August 13, 2018, I met with Ms. Garcia and Ms. Luca separately to discuss the outcome of my investigation. The notes that were marked as Exhibit 5 to my deposition are an accurate summary of my investigation, my conclusions, and the counseling and warnings that I gave to both Ms. Luca and Ms. Garcia at the conclusion of my investigation.

14. I promptly investigated Ms. Garcia's complaint regarding Ms. Luca's alleged assault and counseled and warned Ms. Luca even though Ms. Garcia's complaint was not substantiated.

15. I directed Ms. Garcia to report any further alleged incidents or issues with Ms. Luca, and she reported none.

16. Per Ms. Garcia's request, management never paired Ms. Garcia and Ms. Luca on assignment during the remaining time that Ms. Luca was employed.

17. Beaumont's records reflect that Ms. Luca was not at work during business hours between August 27, 2018 and September 7, 2018.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 12, 2020
Royal Oak, Michigan

_____
Antoinette Carroll

384991

4

**Exhibit 1**

**Antoinette Carroll Declaration**

Charge Therapist - Garcia, Kristina

10/23/19, 6:36 AM

# Charge Therapist

Garcia, Kristina

Thu 2/28/2019 12:35 AM

To: Aphram, Jean <Jean.Aphram@beaumont.org>;

Cc: Carroll, Net <Antoinette.Carroll@beaumont.org>; Hamick, Steven <Steven.Hamick@beaumont.org>; Frankhouse, Allen J <Allen.Frankhouse@beaumont.org>; Burgess, James <James.Burgess@beaumont.org>;

Bcc: kgarcia4@kent.edu <kgarcia4@kent.edu>; Kryssie_B@hotmail.com <Kryssie_B@hotmail.com>;

Importance: High

Effective Immediately.

It is with great sorrow that I am stepping down from the role as one of our departments Charge Therapists. Over the last two years I have thoroughly enjoyed assisting our team through leadership, education and assistance as a Charge Therapist. Acting as Charge I have been able to combine and utilize my education and enthusiasm for professional leadership, the science of respiratory care as well as direct patient care.
As health care providers we recognize the importance of being an active participant in our own health care plans. Due to health concerns I am no longer able to fulfill the current expectations and demands of Charge Therapist. I look forward to continuing to serve as a valuable resource for our team whilst focusing my energy on professional growth and providing excellent patient care.

Kristina Garcia

PLAINTIFF 00010