UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTINA GARCIA,

     Plaintiff,

v.

BEAUMONT HEALTH and RACHEL LUCA,

     Defendants.

Case No:  19-11673

District Judge Linda V. Parker

Magistrate Judge David R. Grand

_____/

| | |
|---|---|
| Lisa C. Ward (P38933)<br>Law Offices of Lisa C. Ward, PLLC<br>Attorney for Plaintiff<br>4131 Okemos Road, Suite 12<br>Okemos, MI  48864<br>517-347-8102<br>lisacward@aol.com | Kienbaum Hardy Viviano Pelton<br> & Forrest, P.L.C.<br>By: Eric J. Pelton (P40635)<br>    Shannon V. Loverich (P53877)<br>Attorneys for Defendant Beaumont Health<br>280 N. Old Woodward Avenue, Suite 400<br>Birmingham, Michigan 48009<br>(248) 645-0000<br>epelton@khvpf.com<br>sloverich@khvpf.com |

_____/

**DECLARATION OF MICHAEL DIXON**

In accordance with 28 U.S.C. § 1746, Michael Dixon states the following:

1.      I make this Declaration based on personal knowledge of the facts stated herein and based on my review of Company documents maintained in the normal course of business. I am able to testify under oath if called upon to do so.

2.      I am currently employed by Beaumont Health as the Director of Human Resources.   My job duties include managing a team of five Human Resources representatives who are responsible for working with and providing guidance to the management at the Royal Oak Hospital on numerous employee-related matters related matters (*e.g.*, compensation planning, performance management, hiring and recruiting, investigation of employee complaints, etc.)

3.      Beaumont's Royal Oak Hospital is the largest hospital in the Beaumont Health System, and it employs approximately 7,900 employees.

4.      In 2018, there were two different Harassment Policies:  (1) the Sexual Harassment Policy issued on September 1, 2016, which was effective through August 6, 2018, attached hereto as **Exhibit 1**; and (2) the Harassment Policy issued on August 6, 2018, attached hereto as **Exhibit 2**.  For complaints lodged on August 6, 2018, it would have been appropriate for managers and/or Human Resources representatives to consult either policy.

5.      Investigations into employee complaints regarding the work environment were (and continue to be) investigated in substantially the same

1

manner under both policies.  Management may, and frequently does, conduct all or part of the investigation with input and guidance from Human Resources and/or the Compliance, Audit, Accreditation and Risk ("CAR") Department, as needed.  It is not improper for management to investigate an employee complaint, especially where the complaining employee requests that the investigation be handled by the manager or management team.

6.      Employees are expected to cooperate in investigations conducted by management, Human Resources, or the CAR Department, by speaking with the individual conducting the investigation.  Employees who are interviewed in an investigation may, but are not required to, provide a written statement confirming the information they provided during the investigatory interview.

7.      Beaumont's records reflect that Rachel Luca was employed as a Respiratory Therapist at the Royal Oak Hospital from June 2, 2015 until her separation on December 11, 2018.  Ms. Luca's employment was terminated because she failed to report to work for her scheduled shifts.  Her last day worked was November 30, 2018.

8.      Beaumont has a rigorous hiring process for individuals involved in patient care.  Beaumont's records reflect that Ms. Luca was hired after a background check that confirmed she had no criminal history, positive references, and all required certifications and licensure.

9.    Prior to Kristina Garcia's complaint about Ms. Luca, Human Resources had not received any complaints about Ms. Luca engaging in sexually inappropriate conduct or comments.

10.   I am familiar with the complaints lodged by Kristina Garcia and the investigatory file that was kept by the Human Resources department.   Human Resources Representative Kevin Brancaleone and I discussed Ms. Garcia's complaints, the investigation of the complaints, and Beaumont's response to the complaints.

11.   Beaumont's records reflect that Ms. Garcia sent a letter of complaint via email dated September 10, 2018 to Human Resources Representative, Kevin Brancaleone, and the Vice President responsible for Rehabilitation Services, Jose Rivera.   That complaint, attached hereto as **Exhibit 3,**  revisited a prior complaint that had been investigated and closed, as well as new allegations about Ms. Luca.

12.   Ms. Garcia's prior complaint about Ms. Luca allegedly assaulting her was not substantiated because management's investigation confirmed that Ms. Luca and the only witness in the room denied that it occurred.

13.   In any sexual harassment investigation, appropriate corrective action, including discipline, will be determined based on the findings of the investigation, whether misconduct is substantiated, and any other factors material to the particular circumstances.   The gender or sexual orientation of the accused or the

3

complainant does not impact the steps taken in the investigation or the level of discipline administered for substantiated misconduct.

14.    Human Resources would not recommend or support the termination of an employee where an investigation concludes that the alleged misconduct of the accused was not substantiated.   This would be unfair to the accused employee and would be inconsistent with Beaumont policy.

15.    Beaumont's records reflect that Messrs. Brancaleone and Rivera immediately responded to Ms. Garcia's September 10, 2018 email of complaint, and their responses are attached hereto as **Exhibit 4**.  Ms. Garcia initially stated that she was on vacation and would speak to them when she returned.   Her response is attached hereto as **Exhibit 4.**

16.    Beaumont's records reflect that Ms. Garcia would not discuss her complaint with Human Resources unless her lawyer could attend. See, **Exhibit 5,** which is the letter Ms. Garcia's lawyer sent Mr. Brancaleone.  Beaumont policy does not permit employees to bring in outside representation in its internal confidential investigations.

17.    Human Resources nevertheless endeavored to investigate Ms. Garcia's complaint by obtaining witness interviews and statements.   These statements were obtained through Mr. Brancaleone and Respiratory Care Director, Jean Aphram.

4

18.   As part of the investigation, Mr. Brancaleone requested written statements from witnesses who previously spoke with Ms. Carroll regarding the investigation into Ms. Luca's alleged assault.   Those witness statements are attached hereto as **Exhibit 6**.   The purpose of obtaining these statements was to supplement Ms. Carroll's investigation summaries with statements directly from the witnesses.

19.   At the time she complained on September 10, 2018, Ms. Garcia did not contend that Ms. Luca was continuing to sexually harass her or engage in further inappropriate conduct or communication of a sexual nature.   It was determined that no further action on that basis was warranted.   The investigation thus focused on Ms. Garcia's "retaliation" claim – *i.e.,* that Ms. Luca was talking about Ms. Garcia's complaint to coworkers although she had been previously told to treat the matter confidentially.

20.   Mr. Brancaleone and Mr. Aphram obtained statements from witnesses regarding what Ms. Garcia claimed was retaliation.   Those witness statements are attached hereto as **Exhibit 7.**

21.   The investigation revealed that Ms. Luca had violated Ms. Carroll's directive and had talked to three coworkers about the allegations against her (Phil Matthewson, Angelita Serratos, Anthony Stout).

22.    As a result, Ms. Luca was issued written discipline in the form of a performance enhancement plan. That discipline is attached hereto as **Exhibit 8.**

23.    The level of discipline given to Ms. Luca was appropriate given the nature of her misconduct – her failure to follow a management directive to keep the matter regarding Ms. Garcia's complaint confidential.

24.    Human Resources never received another complaint from Ms. Garcia about Ms. Luca.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on October 12, 2020
_____, Michigan
384992

Michael Dixon

# Exhibit 1

# Michael Dixon Declaration

Beaumont | HEALTH SYSTEM

| Subject **Sexual Harassment** | | No. **286** | Page **1 of 3** |
| --- | --- | --- | --- |
| Prepared By **Corporate Human Resources** | Prior Issue Date 08/01/12 | Issue Date 09/01/16 | |

GENERAL

It is the intent of Beaumont Health System to create and maintain a safe and productive environment in which employees can effectively perform their work.  As such, Beaumont Health System reaffirms its long-standing policy that sexual harassment of its employees is prohibited.

All employees, including supervisors and managers, will be subject to discipline, up to and including discharge for any act of sexual harassment, which, in the judgment of the Hospital, they have committed.

DEFINITION

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when:

- Submission to the conduct is made either an explicit or implicit condition of employment;
- Submission to or rejection of the conduct is used as the basis for an employment decision affecting the harassed employee;
- The harassment substantially interferes with an employee's work performance or creates an intimidating, hostile, or offensive work environment.

Examples of sexual harassment includes, but are not limited to the following:

- Repeated or unwarranted sexual advances.
- Unconsented touching.
- Sexually derogatory statements about an employee.
- Direct or indirect requests for sexual favors.
- Unwelcome circulation of sexually explicit pictures, cartoons, or reading material.
- Sexually explicit remarks, which cause the recipient, discomfort, humiliation or otherwise interfere with the recipient's ability to perform their job responsibilities in a safe environment.

Personal or social conduct between employee's which is of a consensual nature, and which does not have a discriminatory effect upon an employee's employment, will not be considered as sexual harassment.

**HUMAN RESOURCES, CORPORATE**

Disclaimer: User must ensure that any printed copies of this policy/procedure are current by checking the policy and procedure web page before use.

Beaumont/Garcia 000464

## Beaumont | HEALTH SYSTEM

| Subject | | No. | Page |
|---|---|---|---|
| **Sexual Harassment** | | **286** | **2 of 3** |
| Prepared By | Prior Issue Date | Issue Date | |
| **Corporate Human Resources** | 08/01/12 | 09/01/16 | |

**PROHIBITION OF SEXUAL HARASSMENT**

It shall be a violation of Beaumont Hospital's policy prohibiting sexual harassment for any employee, male or female, managerial, supervisory or hourly, to in any way harass another employee by making unwelcome sexual advances, by either directly or indirectly requesting sexual favors, or by engaging in any other conduct of a sexual nature which constitutes or affects the terms or conditions of any employee's employment with the Hospital. It is also a violation for any employee to require or request, directly or indirectly, that any employee submit to such conduct as a basis for, or as a factor in, any employment decisions affecting such employee. This policy also forbids any employee from engaging in any conduct, which has the effect of either directly, or indirectly creating or contributing to an intimidating, hostile, or offensive working environment because of such conduct.

The Hospital will neither condone nor knowingly fail to take appropriate steps to prohibit the sexual harassment of any of its employees. All employees, including supervisors and managers, will be subject to discipline up to and including discharge, for any act of sexual harassment, which in the judgment of Hospital, they are found to have committed. (Refer to Program for Performance Management No. 282).

**INVESTIGATION PROCESS**

Any employee who believes that he or she is being subjected to sexual harassment in violation of this policy should report the alleged harassment to one of the following individuals:

- Employee's immediate supervisor
- Employee's department manager/director
- Director of Human Resources or his/her designee

In so doing, the employee should clearly state that he or she believes that he or she is the victim of sexual harassment and that the employee is reporting the same pursuant to this policy.

While such complaints or requests for investigation may initially be made either orally or in writing, the Hospital reserves the right to require any employee asserting a violation of this policy to file any complaint or request for investigation in writing. Such written complaint or request for investigation shall specify the nature of the conduct which is alleged to have violated this policy, the individual or individuals who are alleged to have engaged in said conduct, the dates, times, and places of said conduct, as well as any other information which the Hospital deems necessary for it's investigation.

## HUMAN RESOURCES, CORPORATE

Disclaimer: User must ensure that any printed copies of this policy/procedure are current by checking the policy and procedure web page before use.

Beaumont/Garcia 000465

Beaumont® | HEALTH SYSTEM

| Subject | | | No. | Page |
|---|---|---|---|---|
| **Sexual Harassment** | | | **286** | **3 of 3** |
| Prepared By | | Prior Issue Date | Issue Date | |
| **Corporate Human Resources** | | **08/01/12** | **09/01/16** | |

**INVESTIGATION PROCESS (Cont'd)**

Upon receiving a complaint of sexual harassment or a request for investigation of the same, the Hospital will investigate the matter. In doing so, it may require that all employees who possess knowledge of the alleged incident or of similar incidents to cooperate in its investigation by fully and accurately responding to its inquiries in this regard. The failure of any employee, including a complaining employee, to satisfactorily cooperate in such an investigation will be deemed sufficient grounds for discipline, up to and including discharge.

NOT WITHSTANDING THE FOREGOING, NO EMPLOYEE WILL BE SUBJECT TO ANY FORM OF RETALIATION OR DISCIPLINARY ACTION FOR MAKING OR PURSUING A COMPLAINT OF SEXUAL HARASSMENT OR A REQUEST FOR INVESTIGATION OF AN ALLEGED INCIDENT OF SEXUAL HARASSMENT, WHICH COMPLAINT OR REQUEST IS MADE IN GOOD FAITH.

**APPEAL**

Should any complaining employee, after the investigation of any complaint of sexual harassment, disagree with the action of the Hospital in the matter, said complaining employee may have such action reviewed under the Hospital's grievance procedure. (Refer to Employee Grievance Policy No. 284).

**CONFIDENTIALITY**

The Hospital will keep such complaints of sexual harassment confidential to the extent that it is possible and still conduct an investigation.

**INQUIRIES**

Any questions pertaining to this policy should be directed to Human Resources.

**DETAILED PROCEDURES**

None.

**HUMAN RESOURCES, CORPORATE**

Disclaimer: User must ensure that any printed copies of this policy/procedure are current by checking the policy and procedure web page before use.

Beaumont/Garcia 000466

# Exhibit 2

## Michael Dixon Declaration

# Beaumont
### HEALTH

| Title:<br>**Harassment Policy** | | *Applicable to:<br>**Beaumont Health** | Effective Date:<br>**08/06/2018** |
|---|---|---|---|
| | | | Last Periodic Review Date:<br>**08/06/2018** |
| Policy Owner:<br>**SVP and Chief HR Officer** | | Document Type:<br>**Policy** | Functional Area:<br>**Human Resources** |

**\*For This Document, Beaumont Health Includes:**
Beaumont Corporate Shared Services
Beaumont Hospital, Dearborn
Beaumont Hospital, Farmington Hills
Beaumont Hospital, Grosse Pointe
Beaumont Hospital, Royal Oak
Beaumont Hospital, Taylor
Beaumont Hospital, Trenton
Beaumont Hospital, Troy
Beaumont Hospital, Wayne
Beaumont Medical Group
Beaumont Pharmacy Solutions
Post Acute Care

I.   **PURPOSE AND OBJECTIVE:**
To affirm Beaumont Health's commitment to creating and maintaining an environment free from harassment.

II.   **POLICY STATEMENT:**
Beaumont Health is committed to becoming a workplace of choice and a national leader for patient and family-centered care. We will achieve this by living our core values of compassion, respect, integrity, teamwork and excellence, and maintaining a work environment that is free from harassment. To uphold this commitment, Beaumont Health will not tolerate harassment, in any form, to anyone or by anyone including any employee, physician, volunteer, contractor, student, vendor, visitor, or patient.

III.   **SCOPE:**
This policy applies to all Beaumont Health locations and workforce. Workforce includes, but not limited to, employees, students, residents, fellows, volunteers, active medical staff (physicians and non-physician providers) contract individuals, subcontractors, agents, vendors (excluding those whose sole connection with Beaumont is selling or otherwise providing medical supplies or equipment).

IV.   **DEFINITIONS:**

A. HARASSMENT
Harassment is unwelcome verbal, physical or visual conduct that is based on a person's protected characteristic. A protected characteristic means a person's sex,

*Disclaimer: User must ensure that any printed copies of this policy/procedure are current by checking the online version of the policy/procedure before use.*

Page 1 of 4

**Beaumont/Garcia 000078**

# Beaumont
### HEALTH

| Title: **Harassment Policy** | *Applicable to: **Beaumont Health** | Effective Date: **08/06/2018** |
|---|---|---|
| | | Last Periodic Review Date: **08/06/2018** |
| Policy Owner: **SVP and Chief HR Officer** | Document Type: **Policy** | Functional Area: **Human Resources** |

color, race, ancestry, religion, national origin, age, physical or mental disability, medical condition, height, weight, marital status, military or veteran status, citizenship, sexual orientation, gender or any other characteristic protected under applicable federal, state, or local law.  Prohibited harassment is conduct that may affect any term, conditions or benefit of employment; interfere unreasonably with an individual's work performance; or create an intimidating, hostile, or offensive working environment.

B.  <u>SEXUAL HARASSMENT</u>
Sexual harassment means any harassment based on someone's sex or gender.  It includes harassment that is not sexual in nature (for example, offensive remarks about an individual's sex or gender) as well as unwelcome sexual advances, requests for sexual favors, and other physical, verbal or visual conduct of a sexual nature when:

- submission to such conduct is made a term or condition of employment;
- submission to or rejection of the advance, request or conduct is used as a basis for employment decisions;
- such advances, requests or conduct have the purpose or effect of substantially or unreasonably interfering with an employee's work performance by creating an intimidating, hostile or offensive work environment.

Sexual harassment may include conduct that is:
- verbal (epithets, derogatory statements, slurs, sexually-related or gender-related comments or jokes, unwelcome sexual advances or requesting sexual favors);
- physical (assault or inappropriate physical contact such as pinching, touching, brushing up against, or impeding movement);
- visual (displaying sexually suggestive pictures, posters, cartoons, drawings or other items, leering or making sexual gestures, social media postings or communications that are derogatory or sexually suggestive).

C.  <u>OTHER TYPES OF HARASSMENT</u>
Beaumont Health's Harassment policy applies to inappropriate and unwelcoming conduct based on race, color, ancestry, religion, national origin, age, physical or mental disability, medical condition, height, weight, marital status, military or veteran status, citizenship, sexual orientation, or any other characteristic protected under applicable federal, state, or local law.  Such harassment may include conduct that is:

- verbal (epithets, derogatory statements, slurs, derogatory comments or jokes);
- physical (assault or inappropriate physical contact);

*Disclaimer:  User must ensure that any printed copies of this policy/procedure are current by checking the online version of the policy/procedure before use.*

Page 2 of 4

**Beaumont/Garcia 000079**

# Beaumont
### HEALTH

| Title:<br>**Harassment Policy** | *Applicable to:<br>**Beaumont Health** | Effective Date:<br>**08/06/2018** |
| | | Last Periodic Review Date:<br>**08/06/2018** |
| Policy Owner:<br>**SVP and Chief HR Officer** | Document Type:<br>**Policy** | Functional Area:<br>**Human Resources** |

- visual (displaying derogatory signs, posters, cartoons, drawings or derogatory social medial posts or communications or making derogatory gestures).

The examples set forth in this section IV are illustrative only, and not exhaustive. Harassment is prohibited both in the workplace and at employer-sponsored events.

V.   **STANDARDS**
Beaumont Health employees are strictly prohibited from engaging in any form of harassing conduct with any employee, physician, volunteer, student, vendor, contractor, visitor, or patient with whom they come in contact during the course of or as a result of their employment. Similarly, Beaumont Health will not tolerate harassment of Beaumont employees by non-employees such as patients, visitors, affiliated physicians, contractors or vendors.

Beaumont Health prohibits any form of discipline, reprisal, intimidation or retaliation for good faith reporting of incidents of harassment, pursuing any harassment claim or cooperating in related investigations. Further, it is a violation of this policy for a supervisor or manager to require cooperation with or submission to any form of harassment or to retaliate against any person for refusing to do so.

VI.   **REPORTING HARASSMENT:**
All employees are responsible for maintaining an environment free from harassment, and are expected to report incidents of harassment or retaliation to their supervisor or manager, executive leader, or by contacting their local Human Resources Department or the Beaumont Health Trust Line at 1-800-805-2283.

VII.   **PROCESS:**
All complaints of harassment and retaliation will be investigated promptly, thoroughly and fairly. Precautions will be taken to ensure the safety of those involved in the investigation. Investigators will maintain confidentiality throughout the investigation process to the extent it is possible to do so.

Once a complaint is received, an investigation will be conducted by the Compliance, Audit, Accreditation and Risk (CAR) Department and/or Human Resources. To ensure a thorough and fair investigation, the investigators may conduct interviews with the complainant(s), subject(s) of the complaint, and any witnesses to the incident; review related documents, including witness statements, company e-mails and other internal communications; and secure other company assets, such as computers and surveillance videos.

---

*Disclaimer:  User must ensure that any printed copies of this policy/procedure are current by checking the online version of the policy/procedure before use.*

**Beaumont/Garcia 000080**

# Beaumont
### HEALTH

| Title:<br>**Harassment Policy** | *Applicable to:<br>**Beaumont Health** | Effective Date:<br>**08/06/2018** |
|---|---|---|
| | | Last Periodic Review Date:<br>**08/06/2018** |
| Policy Owner:<br>**SVP and Chief HR Officer** | Document Type:<br>**Policy** | Functional Area:<br>**Human Resources** |

Any instances found to be substantiated will be addressed directly with corrective action, up to and including termination.

The CAR Department and/or Human Resources will notify the complainant(s) once the investigation is complete that the investigation has been completed.

VIII. **REFERENCES (if applicable):**
Beaumont Health Non Retaliation Policy

IX. **REVIEW AND REISSUE DATE:**
To be determined

X. **DISCRETION TO MODIFY POLICY:**
SVP and Chief Human Resources Officer

XI. **ATTACHMENTS:**
None

*Disclaimer: User must ensure that any printed copies of this policy/procedure are current by checking the online version of the policy/procedure before use.*

**Beaumont/Garcia 000081**

# Exhibit 3

## Michael Dixon Declaration

**Brancaleone, Kevin**

| | |
|---|---|
| **From:** | Garcia, Kristina |
| **Sent:** | Monday, September 10, 2018 2:43 AM |
| **To:** | Garcia, Kristina |
| **Subject:** | Sexual Harassment |
| **Attachments:** | Garcia - Sexual Harassment.docx |
| | |
| **Sensitivity:** | Private |

Please review attachment.

Thank you,

Kristina Garcia, BAS, RRT-ACCS, AE-C, FCCS

1

September 10th, 2018

To whom it may concern,

I am writing to follow up with my sexual harassment complaint.

To reiterate the situation, on the morning of August 6th, 2018, I informed my immediate supervisor (Mrs. Antoinette Carroll) regarding the events that occurred on July 29th, 2018, resulting in Miss Luca putting her hand down my shirt, pinching my nipple and lifting my breast up out of my bra cup. As requested, I turned in a written statement on August 8th, 2018, to Mrs. Carroll, illustrating the event that had occurred and outlining previous situations with Miss Luca that made me uncomfortable. Mrs. Carroll updated me on the situation stating that she had spoken with Miss Luca and Mrs. Kaye (Mrs. Kaye is Miss Luca's close friend and a witness to the incident) and that she informed Miss. Luca that she was not to talk about the incident with anyone or else this would be turned over to Human Resources for further review. I was accepting of this as I simply wanted the harassment to stop and for everyone to move forward. Since then I have been treated differently by a number of staff (in particular, staff that are close friends with Miss Luca). Some staff members have withheld having friendly conversations with me; other staff members have left the immediate area when it is just them and I alone in the area/department, and another staff member chose to leave the ICU completely to do her charting during downtime rather than sit alone with me in the designated respiratory room as usually occurs. It became apparent to me that Miss. Luca had, in fact, been talking about the situation by the way the atmosphere had changed, especially since several co-workers I had not previously ever had any problems with had begun treating me poorly, although I did not have any hard proof of this. I let these initial things go, hoping that everything would run its course.

Moving forward, I have been approached by my co-workers informing me that Miss Luca continues to discuss the incident and asserts that I am lying about the situation. One such co-worker that she discussed the incident with was Phillip Mathewson. In the early morning hours of August 27th, 2018, I approached Mr. Matthewson to ask exactly what Miss Luca said. Mr. Matthewson confirmed that Miss Luca did, in fact, tell him the story and proclaimed that it was a lie. Mr. Matthewson expressed not wanting to get further involved in the situation. He told me he did not want to speak with management about it, albeit if other people were saying the same thing, he didn't mind being one of a number of people speaking with management, but that he did not want to be the only one speaking for fear of retaliation by Miss Luca. I had anticipated this response so in an effort to protect myself and my reputation I had recorded the conversation I had with Mr. Matthewson. Following the conversation with Mr. Matthewson, I updated Mrs. Carroll and requested that Human Resources be notified immediately as the situation was escalating. I expressed that Miss Luca was slandering my name in an attempt to ruin my reputation for speaking out against her in regards to being sexually harassed. I played Mrs. Carroll a portion of the audio where Mr. Matthewson confirmed that Miss Luca gave her unsolicited views and opinions to him regarding my sexual harassment claim and labeled me a liar. I was assured by both Jean Aphram, Director of Respiratory Care, and Mrs. Carroll that they would contact Human Resources that morning (August 27th, 2018) and updated me. Two weeks have passed and I have yet to hear anything back from my supervisors, our Director, or Human Resources.

Beaumont/Garcia 000299

2

Meanwhile, I continue to have my name slandered by Miss Luca. The most recent incident I am aware of was September 2nd, 2018. I was working in the 4 East ICU with David Antior, RRT. Miss Luca came into the unit a minimum of two times. She did not appear to have come to the unit for any constructive reason such as offering help, as neither Mr. Antior nor I were contacted by her. Instead, Miss Luca approached 4 East ICU nurse Anthony "Tony" Stout, RN, and begun discussing the incident. Mr. Stout states that Miss Luca approached him in his patient's room and specifically told him "Kryssie and Stacy concocted a story to get me fired" and proceeded to elaborate on how I made up the claim. Later that morning, I personally witnessed Miss Luca come to the unit and approach Mr. Stout while he was at the nursing desk and overheard her referencing the story again.

I am very upset that not only was I physically assaulted by Miss Luca, but that she proceeds to attack my character all without any repercussions. I know of nothing that has been done regarding my complaints. My co-workers have become unwillingly involved in this situation such as with Mrs. Stacy Cary, RRT, being named an accomplice to my alleged "lies" meanwhile others are unsolicitedly fed Miss Luca's version of the story accompanied by slander. Not only has Miss Luca involved those in our department but now other departments have become involved as well. She continues this despite management explicitly instructing her not to discuss the situation. This will undoubtedly affect my interprofessional relationships throughout the hospital as Miss Luca is branding me as a liar with the accusation of filing false claims of sexual harassment.

I was assured that this situation would be handled yet it persists without consequence. I have followed the chain of command in reporting this incident and handling it in a professional manner, nevertheless it continues to worsen. I would like to inquire as to what will be done to protect me from Miss Luca's retaliatory actions, relative to my coming forward and reporting sexual harassment. I am requesting a written update on my complaint in addition to the next steps Human Resources will take to ensure a safe work environment that is free from all forms of harassment.

Thank you in advance,

Kristina Garcia, BAS, RRT-ACCS, AE-C, FCCS

Beaumont/Garcia 000300

**Exhibit 4**

**Michael Dixon Declaration**

Brancaleone, Kevin

| | |
|---|---|
| **From:** | Garcia, Kristina |
| **Sent:** | Monday, September 10, 2018 7:47 PM |
| **To:** | Brancaleone, Kevin |
| **Subject:** | Re: Sexual Harassment |
| | |
| **Sensitivity:** | Private |

Thank you very much Mr. Brancaleone.

Kristina Garcia

**From:** Brancaleone, Kevin
**Sent:** Monday, September 10, 2018 12:27:54 PM
**To:** Garcia, Kristina
**Subject:** RE: Sexual Harassment

Thank you, Kristina. In the meantime, I will work with Jean Aphram to make sure your concerns are being appropriately addressed. I look forward to speaking with you, when you return.

Please enjoy and have a safe vacation!

Kevin

**From:** Garcia, Kristina
**Sent:** Monday, September 10, 2018 12:20 PM
**To:** Brancaleone, Kevin
**Subject:** Re: Sexual Harassment
**Sensitivity:** Private

Mr. Brancaleone,

I'd like to thank you for your prompt response. I am currently on vacation, while this is obviously very important to me, I welcome discussing this further upon my return. I will be available on or after September 27th, 2018.

Thank you again,

Kristina Garcia

**From:** Brancaleone, Kevin
**Sent:** Monday, September 10, 2018 8:31:12 AM
**To:** Garcia, Kristina
**Subject:** RE: Sexual Harassment

Hello, Kristina: Can you please give me a call in Human Resources at ███████ as soon as you are available to do so? I will attempt to reach you this morning, as well.

Thank You,

1

Kevin Brancaleone
Human Resources

**From:** Garcia, Kristina
**Sent:** Monday, September 10, 2018 2:43 AM
**To:** Garcia, Kristina
**Subject:** Sexual Harassment
**Sensitivity:** Private

Please review attachment.

Thank you,

Kristina Garcia, BAS, RRT-ACCS, AE-C, FCCS

2

Beaumont/Garcia 000320

Re: Sexual Harassment - Garcia, Kristina                                        10/23/19, 6:23 AM

# Re: Sexual Harassment

### Rivera, Jose A

Mon 9/10/2018 7:00 AM

To:Garcia, Kristina <Kristina.Garcia@beaumont.org>;

Sensitivity   Private

Hi Kristina,

Thank you for bringing this to my attention. If it's ok with you I want to do an investigation into this.

Thanks,

José

On Mon, Sep 10, 2018 at 2:43 AM -0400, "Garcia, Kristina" <Kristina.Garcia@beaumont.org> wrote:

> Please review attachment.
>
> Thank you,
>
> Kristina Garcia, BAS, RRT-ACCS, AE-C, FCCS

PLAINTIFF 00004

# Follow-Up To Complaint

### Aphram, Jean
Tue 9/11/2018 4:23 PM

To:Garcia, Kristina <Kristina.Garcia@beaumont.org>;

Hi Krissie,

Hope you are having a safe and happy vacation.  I just wanted to reach out so I can follow up with you on your complaint.  I know you are off and returning the Sept. 27th.  If you want to contact me, please call 248-898-6038, or I would be more than happy to come in early on Friday Sept. 28th,  to sit down and discuss in person.  Let me know what works best for you.

*Jean Aphram, MBA, RCP*
*Director of Respiratory Care*
*Pulmonary Rehab and Pulmonary Physiology*

*Beaumont Health*
*3601 W. 13 Mile Rd.*
*Royal Oak, MI 48073*
*Office 248.898.6038*
*Jean.Aphram@Beaumont.org*



https://mail.beaumont.org/owa/#viewmodel=ReadMessageItem&itemI...QXhCS7GEQ6AI21OyAADy4mKfAAA%3D&IsPrintView=1&wid=13&Ispopout=1          Page 1 of 1

PLAINTIFF 00014

# Exhibit 5

# Michael Dixon Declaration

**Brancaleone, Kevin**

| | |
|---|---|
| **From:** | Lisa C. Ward <lisacwardlaw@gmail.com> |
| **Sent:** | Friday, September 14, 2018 12:27 PM |
| **To:** | Brancaleone, Kevin |
| **Subject:** | Letter |
| **Attachments:** | L Brancaleone 9.14.18.pdf |

**WARNING:** This email originated from outside of Beaumont Health.
**Do not click on any links or open any attachments** unless you recognize the sender and are expecting the message.

Dear Mr. Brancaleone,

Attached, please find a letter from attorney Lisa C. Ward. If you have any questions, please contact our office.

Thank you,
Lindsay Weiss
*Legal Assistant*

**Law Offices of Lisa C. Ward, PLLC**
4131 Okemos Road, Ste. 12
Okemos, MI 48864
(T): 517-347-8100
(E): lisacwardlaw@gmail.com

1

**Beaumont/Garcia 000333**





TELEPHONE 517-347-8100

**LAW OFFICES OF**
# LISA C. WARD
PLLC
4131 OKEMOS ROAD • SUITE 12
OKEMOS, MICHIGAN 48864
E-MAIL lisacwardlaw@gmail.com

LISA C. WARD
LICENSED IN MI & DC

September 14, 2018
*Via E-Mail and First Class
Mail*

Kevin Brancaleone
Beaumont Health
3601 W. 13 Mile Rd.
Royal Oak, MI 48073

    *Re: Rachel Luca*

Dear Mr. Brancaleone:

    Please be advised that I have been retained by Kristina Garcia for representation in this matter. It is my understanding that HR intends to interview Ms. Garcia regarding her complaint. Ms. Garcia and I can be available on September 26, 2018 for this meeting. If you have any questions, please contact our office.

Sincerely,

Lisa C. Ward
*Attorney at Law*

Beaumont/Garcia 000334

**Exhibit 6**

**Michael Dixon Declaration**

9/14/18

I was asked to write a statement regarding alledged altercation between Rachel L. + Tryssie. To the best of my recollection the only thing said by Rachel was as follows: She brushed across my chest area when she passed by me and said something like oh I just wanted to grab your boobies! Hehe. I didn't think anything of it and just laughed it off. I really do not remember anything else that was said and do not want to pass on any info that I am not sure of.

Dianne Draper

Beaumont/Garcia 000359

**Aphram, Jean**

| | |
|---|---|
| **From:** | Davis, Marcia |
| **Sent:** | Monday, September 17, 2018 9:47 PM |
| **To:** | Aphram, Jean |
| **Subject:** | Situation with Rachel and Kryssie |
| **Attachments:** | Jean.docx |

Hi Jean,

I attached a written account that I observed between Rachel and Kryssie.  Unfortunately, I didn't see or hear anything inappropriate.

Marcia

1

Beaumont/Garcia 000380

9/17/2018

Jean,

In regards to the situation with Rachel Luka and Kryssie Garcia, unfortunately I didn't see or hear anything. I was working in 5 East and was supposed to help Colleen Kaye, who was working in 3 East, during my down time. I walked into the Respiratory equipment room in 3 East and saw Colleen on the computer, Kryssie sitting next to her and Rachel standing behind them. After asking Colleen if she needed any help, I left the room and went to assist the therapist in 2 East. I didn't hear them talking or see anything that might be construed as inappropriate.

Marcia Davis, RCP

Beaumont/Garcia 000381

**Brancaleone, Kevin**

| | |
|---|---|
| **From:** | Aphram, Jean |
| **Sent:** | Monday, September 24, 2018 7:07 AM |
| **To:** | Brancaleone, Kevin |
| **Subject:** | FW: Statement |

Hi Kevin,
Here is Colleen Kaye's statement.
Jean

**From:** Kaye, Colleen
**Sent:** Saturday, September 22, 2018 10:55 PM
**To:** Aphram, Jean <Jean.Aphram@beaumont.org>
**Subject:** Statement

Hi Jean,

I apologize for the late response on this matter, it truly slipped my mind while at work the last few nights and I just sat down and had a few minutes.

Statement:

As I told Net when she asked me a few weeks ago about this matter that occurred between Rachel and Krissy, I did not see anyone touched inappropriately nor did anything that occurred during the conversation strike me as harmful.

The 3 of us (myself, Krissy and Rachel) were sitting in the back supply room for a few minutes around break time. I was charting for a few minutes. A conversation was started about bras because I am currently pregnant and we were just talking briefly about pregnancy things and comfortable bras were brought up. We all showed the strap part of our bras up near our shoulders to compare if they were similar in comfort, etc. Somehow nipple color was brought up as well, but it was a joking around part of the conversation and I didn't take any part of it serious. During this conversation and during the shift I did not witness anyone feeling uncomfortable about the conversation. To me it was just another normal night at work. I feel some people may joke around more than others, but in a harmless manner. I do know that conversations that occur during break, out of patient care areas, may not always be the most appropriate and I am aware of this. Thank you and I hope this helps.

Colleen Kaye

1

Beaumont/Garcia 000343

**Brancaleone, Kevin**

| | |
|---|---|
| **From:** | Aphram, Jean |
| **Sent:** | Monday, September 24, 2018 7:39 AM |
| **To:** | Brancaleone, Kevin |
| **Subject:** | FW: statement |

Good Morning Kevin,

Below is Rachel Luca's statement regarding original incident.

Jean

**From:** Luca, Rachel
**Sent:** Monday, September 24, 2018 4:48 AM
**To:** Aphram, Jean <Jean.Aphram@beaumont.org>
**Subject:** statement

here is the statement that was requested regarding a conversion that occured a few weeks ago. we were sitting in the back room of 3E Krissie, Colleen and I. we were discussing pregancy and comfortble materinty bras. i told colleen that sport bras were comfortable when i was preganant and nursing. krissie chimed in and said why dont you get something like this and showed her bra strap, i said thats similar to mine, your tattoo is showing, krissie made a comment saying you just wanted to see what color my nipples are, if they were dark or light. i said no your shirt is lowcut and showing your chest tattoo. she said mmmhmh  we all know that your a trisexual..willing to tri anything..  i said no krissie i am not into women.  than we continued to talk the conversation carried on. i didnt at anypoint feel that anyone felt uncomfortable and shortly after that i got a phone call for a patient, so i left the room.

Rachel Luca

1

**Beaumont/Garcia 000342**

Exhibit 7

**Michael Dixon Declaration**

9-13-18

When I was working in 4 east with Rachel at the beginning of the shift she had mentioned, from what I can recall, that Kryssie and her were in the backroom in 3 east talking about their bras.  Rachel said that all she did was feel the fabric on Kryssie's bra.  After that she stated Kryssie spoke with management stating that Rachel touched her breasts.  Rachel stated that Kryssie was not telling the truth about what happened that particular night. After that Rachel said she was not supposed to speak about the event and we went back to work.

I cant remeber if it was the same day or the next day in 4 east working with Rachel but she also mentioned a time when  they (Rachel and Kryssie) were walking and their hands touched and Rachel made a joke about it but I can not recall exactly what she "jokingly' said to Kryssie.

1

Beaumont/Garcia 000358

**Brancaleone, Kevin**

| | |
|---|---|
| **From:** | Aphram, Jean |
| **Sent:** | Tuesday, September 18, 2018 9:33 AM |
| **To:** | Brancaleone, Kevin |
| **Subject:** | FW: Regarding Sept 3rd |

Hi Kevin,
Here is David's statement.

**From:** Antior, David P
**Sent:** Monday, September 17, 2018 8:09 PM
**To:** Burgess, James <James.Burgess@beaumont.org>; Aphram, Jean <Jean.Aphram@beaumont.org>
**Subject:** Regarding Sept 3rd

Regarding the night of Sept 3rd. I worked with Krissy Garcia in 4 East. I never saw Rachel Luca or spoke with her that night. Feel free to email me back if you have any other questions.

1

**Beaumont/Garcia 000336**

**Brancaleone, Kevin**

| | |
|---|---|
| **From:** | Aphram, Jean |
| **Sent:** | Friday, September 28, 2018 11:58 AM |
| **To:** | Brancaleone, Kevin |
| **Subject:** | FW: following statement |

**From:** Kaye, Colleen
**Sent:** Friday, September 28, 2018 5:41 AM
**To:** Aphram, Jean <Jean.Aphram@beaumont.org>
**Subject:** following statement

Good Morning Jean,

Jim asked me to send an email stating whether or not I've heard anything further about the situation. I have not heard anything or anyone speaking of this matter. I do know of 2 other people that had to give a statement (Dianna and Marcia), but that is all I've heard of this matter. Thank you.

Colleen Kaye

1

Beaumont/Garcia 000348

**Brancaleone, Kevin**

| | |
|---|---|
| From: | Brancaleone, Kevin |
| Sent: | Monday, October 08, 2018 8:52 AM |
| To: | Serratos, Angelita |
| Subject: | RE: In regards to the incident involving Kristina Garcia and Rachel Luca |

Hello, Angelita:

Thank you for this information. Have you shared any of these details with either your Supervisor or department Director, Jean Aphram?

I would like to meet with you as well, to find out more information. Myself or Tina from my office will be reaching out to you to try and schedule something soon.

Thank you again,

Kevin Brancaleone
Human Resources

From: Serratos, Angelita
Sent: Sunday, October 07, 2018 4:10 PM
To: Brancaleone, Kevin
Subject: In regards to the incident involving Kristina Garcia and Rachel Luca

Good afternoon Kevin,

My name is Angelita and I am a registered respiratory therapist here at Beaumont Royal Oak. I am emailing you today because I was informed that you were handling the incident involving Rachel Luca and Kristina Garcia and I want to state what was said to me on Friday September 14th 2018 and Monday September 17th 2018.

On Friday September 14th on midnight shift. I was working on North tower. I was coming down the elevator from North tower and was walking the hall on 4 Center. $ center MPCU is where Rachel was working. As I was walking by, I saw Rachel Luca on her WOW outside a patient's room. She looked upset and flustered. I approached her and offered her some help with her work assignment and asked her if she was okay. In turn she replied that she was upset because she was claiming that people in our department was trying to get her fired. And that Kristina is claiming that she (Rachel) sexually assaulted her. Rachel went on stating that Kristina is lying and telling people in our department that she (Rachel) is bi-sexual. Rachel continued to vent to me how upset she is and that she is not bi-sexual, and is going to continue to stay reserved and keep a low profile while she is at work. I told her that maybe she should speak to someone in HR if she was upset and stressed out about the situation and told her that I was sorry that this was happening to her.

On Monday September 17th 2018, Rachel Luca and I attended an ACLS class here at Beaumont Royal Oak. During our lunch brake from the class, Rachel told me that she was going to go to the respiratory department to speak to someone. When she returned, Rachel looked upset. During the class Rachel sent me a text message stating that she was called to the office. After the class I went to my car and sent Rachel a text stating

1

Beaumont/Garcia 000350

that things will work itself out and that I was sorry that this was happening to her. Immediately after I sent my text she called me.  She was crying and she was very upset. She was upset that she was called into the office. She was venting to me that people in our department are trying to get her fired and telling that Kristina is lying about the situation between them. Continue to say that Kristina is telling everyone that she (Rachel) is bi-sexual and that she wasn't. She then tried to explain to me in her own words what happened, but I told her that I didn't want to know about the situation and that she should have not told me. That she needed to keep the situation private and speak to management. I asked her who else have you told besides myself about the situation between you and Kristina. Rachel claimed that she told one other person and the reason she told this other person was because they are good friends. Rachel continued to vent to me on how she was afraid that she was going to lose her job and doesn't have anyone to trust.  I stated to Rachel that I no longer wanted to know anymore details about the incident. I also stated to Rachel that she should not talk about the incident to anyone else and that she should contact HR and speak them in regards to how she felt. I told her that if she continued to feel stressed out at work, that she should meet with someone in HR and give her statement.


This is all that I have, thank you for your time


Angelita Serratos

2

*Angelito Serratos*

## KG Harassment Investigation Interview Notes

*Human Resources are investigating a reported incident between two Respiratory Care employees.  Human Resources are trying to ascertain what kinds of information may be circulating throughout the workplace.  We are trying to confirm what sort of information (if any) is being spoken about this matter in the workplace, and by whom.*

- Have you heard of, or do you have any personal knowledge of an alleged incident between Rachel Luca and Kristina Garcia? *Know about the situation. She med get the name from Garcia.*

- What sort of information have you heard regarding this matter? *That an accusation was made about lying, bisexual, name calling. Garcia upset with what was said.*

- How did you learn about this matter? *Not likely. Hears rumor mill. Info passes along through employees.*

- From whom specifically do you recall hearing about this matter? *Two ways. Kristina Garcia appears downside only. Heard through rumor mill (through Daniel)*

- Have you personally heard either Ms. Luca or Ms. Garcia share details with anyone regarding this matter? *Garcia shared the just of it with her. Angelito who has go to H.R. anonymous basis only.*

- Have you specifically heard anyone else in the workplace share any details regarding this matter? If so, whom? *Not really.*

- Have you witnessed any inappropriate behavior or conduct between these two employees?  Bullying, intimidation, retaliation, physical contact? *Prior to this No.*

- Is there anything else you would like to share with me regarding this situation?

Beaumont/Garcia 000362

MARCIA DAVIS

### KG Harassment Investigation Interview Notes

*Human Resources are investigating a reported incident between two Respiratory Care employees. Human Resources are trying to ascertain what kinds of information may be circulating throughout the workplace. We are trying to confirm what sort of information (if any) is being spoken about this matter in the workplace, and by whom.*

- Have you heard of, or do you have any personal knowledge of an alleged incident between Rachel Luca and Kristina Garcia? *yes. No personal knowledge.*

- What sort of information have you heard regarding this matter? *only Heard From Luca (august). Luca coming distress Ramona reacting her of sexual Harassment. Heard in Y dept.*

- How did you learn about this matter? *Heard From Rachel's comment in dept. Routine to her. (one time)*

- From whom specifically do you recall hearing about this matter? *Rachel. maybe a couple of days later (?).*

- Have you personally heard either Ms. Luca or Ms. Garcia share details with anyone regarding this matter? *NO. haven't heard anything*

- Have you specifically heard anyone else in the workplace share any details regarding this matter? If so, whom? *NO OTHER STAFF TALKing NO For as she Knows.*

- Have you witnessed any inappropriate behavior or conduct between these two employees? Bullying, intimidation, retaliation, physical contact? *NO.*

- Is there anything else you would like to share with me regarding this situation? *Rachel Does Not have Best Sense of Keeping to self. Talks alot. But Has not heard... (Her Talking)*

Beaumont/Garcia 000363

*Dianna Grayson* — *[handwritten notes]*

### KG Harassment Investigation Interview Notes

*Human Resources are investigating a reported incident between two Respiratory Care employees. Human Resources are trying to ascertain what kinds of information may be circulating throughout the workplace. We are trying to confirm what sort of information (if any) is being spoken about this matter in the workplace, and by whom.*

- Have you heard of, or do you have any personal knowledge of an alleged incident between Rachel Luca and Kristina Garcia? *Yes, Has Heard.*

- What sort of information have you heard regarding this matter? *[handwritten]*

- How did you learn about this matter? *[handwritten]*

- From whom specifically do you recall hearing about this matter? *[handwritten]*

- Have you personally heard either Ms. Luca or Ms. Garcia share details with anyone regarding this matter? *No, not that she's aware of.*

- Have you specifically heard anyone else in the workplace share any details regarding this matter? If so, whom? *No, not really. Doesn't believe anyone is continuing to talk about it*

- Have you witnessed any inappropriate behavior or conduct between these two employees? Bullying, intimidation, retaliation, physical contact? *Nothing.*

- Is there anything else you would like to share with me regarding this situation? *[handwritten notes]*

*Anthony Stout*

## KG Harassment Investigation Interview Notes

*Human Resources are investigating a reported incident between two Respiratory Care employees. Human Resources are trying to ascertain what kinds of information may be circulating throughout the workplace. We are trying to confirm what sort of information (if any) is being spoken about this matter in the workplace, and by whom.*

- **Have you heard of, or do you have any personal knowledge of an alleged incident between Rachel Luca and Kristina Garcia?** *Knows both. Has Herd. Some details about claim through Rachel Luca.*

- **What sort of information have you heard regarding this matter?** *Herd directly from Rachel Herald. Brought matter up. "Can you believe this?" talked about accusation.*

- **How did you learn about this matter?** *Rachel approached him one morning on a unit.*

- **From whom specifically do you recall hearing about this matter?** *Rachel / brought it up. One time in the morning. Labor w/no.*

- **Have you personally heard either Ms. Luca or Ms. Garcia share details with anyone regarding this matter?** *No. very private person (Kristina) only heard Rachel Luca mention to him one time,*

- **Have you specifically heard anyone else in the workplace share any details regarding this matter? If so, whom?** *No. they dont like each other very much,*

- **Have you witnessed any inappropriate behavior or conduct between these two employees? Bullying, intimidation, retaliation, physical contact?**
  *- No. Everyone very professional*
  *- Rachel + other shares info regarding personal life.*

- **Is there anything else you would like to share with me regarding this situation?**
  *No other info...*

Beaumont/Garcia 000365

# Exhibit 8

# Michael Dixon Declaration

**Brancaleone, Kevin**

| | |
|---|---|
| From: | Burgess, James |
| Sent: | Friday, October 19, 2018 4:00 PM |
| To: | Aphram, Jean |
| Cc: | Brancaleone, Kevin |
| Subject: | Rachel Luca |

Hi Jean.  Allen and I met with Rachel Lucu last night to give her a level 1 pip. Theresa Pooley, the asst. nurse manager for 4 east, was also present.  I asked her to sit in on the meeting so that there would be another female present.  I told Rachel that Theresa was there as another administrator.   We met in the 4-east conference room.  I asked Rachel to read the pip.  She did and said that she did not understand what this was about.  I outlined the events and the investigation and the pip that resulted.  I told her the pip was about retaliation against Kryssie .  She (Rachel) had been given explicit instructions not to talk to other staff members about the incident, which she ignored.  Rachel became upset and started to cry stating that she was the one being bullied and that this is not fair.  I suggested that she write down any complaints that she might have and they would be investigated.   I told her that all communications with staff needed to be professional.   I reiterated the provisions spelled out in the pip.  Specifically that she is not to talk with staff about the incident involving Kryssie, and that failure to comply would result in escalation of the corrective action process to a level 2 pip and possibly include the loss of her position at Beaumont health.

James Burgess, RCP
Clinical Supervisor, Respiratory Care

Beaumont Health
3601 West 13 Mile Road
Royal Oak, MI 48037
Office: ███████████
Pager: ███████████████████████

1

Beaumont/Garcia 000302

**Brancaleone, Kevin**

| | |
|---|---|
| **From:** | Aphram, Jean |
| **Sent:** | Friday, October 19, 2018 3:53 PM |
| **To:** | Brancaleone, Kevin |
| **Subject:** | FW: Message from "DEV16096" |
| **Attachments:** | 20181019154642224.pdf |

Hi Kevin,

Jim Burgess, Allen Frankhouse and Theresa Pooley Assistant Nurse Manager 4 East, just to sit in and witness, as Jim and Allan administered PIP to Rachel.  She was very emotional, could not remember situation.  Jim said that she was deflecting and accusing Krissle as being the more aggressive and vulgar person in this situation.  Jim kept things on point and that she did not follow warning from the original discussion to keep situation confidential.  She did refuse to sign PIP.  I am sending original via interdepartmental mail.  I made a copy for her as well.  We can talk more on Monday. Have a good weekend.

Jean

1

**Beaumont/Garcia 000352**

**Beaumont** | HEALTH SYSTEM

## Performance Improvement Plan

| Date Prepared: 10/9/18 | Incident Date: / / | | | | |
|---|---|---|---|---|---|
| **Employee Name:** Rachel Luca | | **Employee ID #** 241633 | **Department Name:** Respiratory Care - RO | **Position Title:** Respiratory Therapist | **Hire Date:** 6/2/15 |

### 1) Describe what happened:

**What happened?**
In August 2018, allegations of harassment and retaliation were brought to the attention of Respiratory Care management, regarding an alleged incident between Ms. Luca and another Respiratory Care employee. Respiratory Care leadership conducted an investigation into the matter. During the course of the department's investigation and in the time period which followed, Ms. Luca demonstrated poor judgment by discussing the details of the alleged matter with other hospital employees. Ms. Luca was given explicit instructions by Respiratory Care management to avoid doing so, yet several employee witnesses support the fact Ms. Luca has had discussions with other employees regarding the matter. Ms. Luca made a reckless behavioral choice to disregard management's direction in this situation.

**What should have happened?**
Ms. Luca had a duty to avoid causing substantial and unjustifiable risk or harm to others, as driven by her actions. Ms. Luca should have maintained an appropriate level of conduct and discretion, relative to communications in this matter. Ms. Luca should not have continued discussions, or shared details, relative to the circumstances or the investigation. If Ms. Luca had continued concerns in this matter, she should have approached Respiratory Care management with those concerns..

### 2) Please classify the behavior of the employee in the event: (not applicable to attendance/tardiness)

☐ Repetitive Human Error
*Needs to be filed in HR. file*

☐ Repetitive At-Risk Behavior
*Needs to be filed in HR. file*

☒ Reckless Behavior
*Needs to be filed in HR. file*

### 3) Nature of incident: Please check the appropriate box or specify if incident is not listed.
*(This list is not inclusive of all possible incidents but rather those most commonly addressed with employees).*

☐ Failure to Follow Policy & Procedures

☐ Excessive Tardies

☐ Excessive Absences

☐ Quality of Work *(Poor Job Performance)*

☐ Neglect of Duty

☐ Failure to Follow Dept. Call-in Policy

☒ Failure to Follow Supervisor's Instructions

☐ Quantity of Work

☐ Violation of Confidentiality Policy

☐ Unexcused Absence

☐ Unprofessional Communication or Behavior

☐ Disorderly or Improper Conduct

☐ Failure to Complete or Maintain Mandatory Requirements

☐ Working but Impaired

☐ Falsification of Work Records

☒ Other Poor Job Performance - Inappropriate Behavior

### 4) Identify the duty(ies) which was breached/violated in accordance with Just Culture:

☒ Duty to Avoid Causing Unjustifiable Risk or Harm
☐ Duty to Follow a Procedural Rule (Unexcused Absence)
☐ Duty to Produce an Outcome.(Attendance/Tardiness)

### 5) Supervisor expectations:

Beaumont/Garcia 000353

There is an expectation that in her interactions with others, Ms. Luca has a duty to produce appropriate outcomes, adhere to the Beaumont Standards of Service and follow the Hospital's Code of Conduct guidelines.

Ms. Luca is expected to perform her duties in a professional manner.  Interactions with all individuals should occur with professionalism, mutual respect, discretion and proper conduct.

When given specific direction by her leadership team to avoid discussing the matter with other staff members, there was an expectation that Ms. Luca would follow that direction.

DEC 2013

2

Beaumont/Garcia 000354

**Beaumont** | HEALTH SYSTEM

## Performance Improvement Plan

### 6) Check action given:

☒ Level I - Performance Improvement Plan

☐ Level II - Performance Improvement Plan
without Suspension

☐ Level II - Performance Improvement Plan
with __ Day(s) Suspension – Dates:   /  /   to   /  /

☐ Level III - Termination of Employment – Effective Date:   /  /

### 7) Employee background information:

Beaumont's Harassment Policy outlines that "Prohibited harassment is conduct that may affect any term, conditions or benefit of employment; interfere unreasonably with an individual's work performance; or create an intimidating, hostile, or offensive working environment."

Beaumont's Code of Conduct states that "As part of our commitment to having a respectful and inclusive workplace of choice, we do not allow harassment or bullying.  we consider harassment to include language or conduct, which may be derogatory, intimidating or offensive to others."

Conduct on the part of a Beaumont employee that is inappropriate or that impedes harmonious interactions and relationships shall not be tolerated.

### 8) Consequences if the behavior/breach occurs again:

Given Ms. Luca's reckless behavioral choice to disregard management's direction in this situation, she is being issued a Performance Improvement Plan Level I for Poor Job Performance - Inappropriate Behavior.

Ms. Luca is expected to show immediate improvement and discretion in her interactions with others.  As a part of this Performance Improvement Plan, Ms. Luca will enter a 30-Day evaluation period, reviewing her behavior and performance.  Once she has successfully completed the evaluation period, she will be expected to maintain this improved behavior and performance throughout the remainder of her employment with the Hospital.

Failure to meet these expectations will result in further progression through the Hospital's  Performance Management Program Policy (#282), up to and including Termination of Employment with Beaumont Health.

**NOTE:**
- Receipt of two suspensions in an 18-month period of time will result in termination of employment.
- Employees in an active suspension will not be eligible for a salary increase for 18 months from the date of the incident.
- Licensed health care professionals will be reported to the State of Michigan Licensing Bureau in accordance with Michigan State law when suspension level and termination occurs.

I acknowledge that this discussion session has occurred, that my breach(s) has been reviewed with me, and I have received a copy of this form.  I understand that my signature does not necessarily indicate that I agree with this action, only that I have received a copy of this form.  I further understand that future breaches may result in additional disciplinary action up to and including discharge.

_Rachel refused to sign_      _10-18-19_
Employee Signature          Date

Original sent to HR ☐ _____
Copy to Employee ☐ _____
Copy to Employee File ☐ _____

This original Performance Improvement Plan will be maintained in the employee's personnel file in the Human Resources Department. All Level I, II and III Plans must have prior approval from the appropriate Administrator and the Human Resources Department.

_____     _10-18-19_      _____     _10-10-18_
Dept. Supervisor Signature    Date           Dept. Manager Signature        Date

_____     _10/10/18_      _____     _10.10.18_
Administrator Signature    Date           Human Resources Signature     Date

DEC 2013                                                                 3

Beaumont/Garcia 000355