
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTINA GARCIA,

    Plaintiff,

v.

BEAUMONT HEALTH and RACHEL LUCA,

    Defendants.

Case No: 19-11673

District Judge Linda V. Parker

Magistrate Judge David R. Grand

___

Lisa C. Ward (P38933)
Law Offices of Lisa C. Ward, PLLC
Attorney for Plaintiff
4131 Okemos Road, Suite 12
Okemos, MI 48864
517-347-8102
lisacward@aol.com

Kienbaum Hardy Viviano Pelton
 & Forrest, P.L.C.
By: Eric J. Pelton (P40635)
    Shannon V. Loverich (P53877)
Attorneys for Defendant Beaumont Health
280 N. Old Woodward Avenue, Suite 400
Birmingham, Michigan 48009
(248) 645-0000
epelton@khvpf.com
sloverich@khvpf.com

___

**DECLARATION OF JEAN APHRAM**

In accordance with 28 U.S.C. § 1746, Jean Aphram states the following:

1. I make this Declaration based on personal knowledge of the facts stated herein. I am able to testify under oath if called upon to do so.

2. I am currently employed with Beaumont Health as the Director of Respiratory Care at its Royal Oak Hospital.

3. On Friday, September 7, 2018, I met with Rachel Luca to discuss Kristina Garcia's complaint that Ms. Luca was retaliating against her by talking to coworkers about Ms. Garcia's assault complaint. Ms. Luca denied talking about the incident or engaging in any improper conduct toward Garcia. Ms. Luca said that she felt she was the one being improperly targeted and falsely accused by Ms. Garcia. I advised Ms. Luca to bring her concerns to Human Resources if she felt that was the case.

4. On October 9, 2018, Ms. Luca's manager, James Burgess, and Human Resources representative Kevin Brancaleone prepared written discipline for Luca in the form of a Performance Improvement Plan. That document is attached hereto at Exhibit 1. Mr. Burgess administered the discipline to Ms. Luca on October 18, 2018. Ms. Luca was not at work during normal business hours between October 9, 2018 and October 18, 2018, and that is why it was administered on October 18, 2018.

1

5. Mr. Burgess reported to me that Ms. Luca cried during the discipline and claimed it was unfair and that she was the one being bullied by Ms. Garcia.

6. During my March 13, 2020 deposition, I was asked whether the documents marked as Exhibit 6 were the correct packet of documents I provided to Human Resources Representative Kevin Brancaleone on September 10, 2018. I said they were. That is not correct. Ms. Garcia's statement, control labeled 307-308 in Exhibit 6, is not the statement that was in the materials I provided to Mr. Brancaleone. The statement included in Exhibit 6 to my deposition is dated September 10th and has handwriting on it that is not mine. The correct statement that I provided to Mr. Brancaleone on September 10, 2018 is the one that was marked as Exhibit 3 to my deposition.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 13th, 2020
Royal Oak, Michigan

Jean Aphram

384997

2

# Exhibit 1
# Jean Aphram Declaration

**Beaumont® | HEALTH SYSTEM**

# Performance Improvement Plan

| Date Prepared: 10/9/18 | Incident Date: / / | | | |
|---|---|---|---|---|
| Employee Name: Rachel Luca | Employee ID # 241633 | Department Name: Respiratory Care - RO | Position Title: Respiratory Therapist | Hire Date: 6/2/15 |

### 1) Describe what happened:

**What happened?**
In August 2018, allegations of harassment and retaliation were brought to the attention of Respiratory Care management, regarding an alleged incident between Ms. Luca and another Respiratory Care employee. Respiratory Care leadership conducted an investigation into the matter. During the course of the department's investigation and in the time period which followed, Ms. Luca demonstrated poor judgment by discussing the details of the alleged matter with other hospital employees. Ms. Luca was given explicit instructions by Respiratory Care management to avoid doing so, yet several employee witnesses support the fact Ms. Luca has had discussions with other employees regarding the matter. Ms. Luca made a reckless behavioral choice to disregard management's direction in this situation.

**What should have happened?**
Ms. Luca had a duty to avoid causing substantial and unjustifiable risk or harm to others, as driven by her actions. Ms. Luca should have maintained an appropriate level of conduct and discretion, relative to communications in this matter. Ms. Luca should not have continued discussions, or shared details, relative to the circumstances or the investigation. If Ms. Luca had continued concerns in this matter, she should have approached Respiratory Care management with those concerns..

### 2) Please classify the behavior of the employee in the event: (not applicable to attendance/tardiness)

☐ Repetitive Human Error
*Needs to be filed in HR. file*

☐ Repetitive At-Risk Behavior
*Needs to be filed in HR. file*

☒ Reckless Behavior
*Needs to be filed in HR. file*

### 3) Nature of incident: Please check the appropriate box or specify if incident is not listed.

*(This list is not inclusive of all possible incidents but rather those most commonly addressed with employees).*

| | | | |
|---|---|---|---|
| ☐ Failure to Follow Policy & Procedures | ☐ Excessive Tardies | ☐ Excessive Absences | ☐ Quality of Work (Poor Job Performance) |
| ☐ Neglect of Duty | ☐ Failure to Follow Dept. Call-in Policy | ☒ Failure to Follow Supervisor's Instructions | ☐ Quantity of Work |
| ☐ Violation of Confidentiality Policy | ☐ Unexcused Absence | ☐ Unprofessional Communication or Behavior | ☐ Disorderly or Improper Conduct |
| ☐ Failure to Complete or Maintain Mandatory Requirements | ☐ Working but Impaired | ☐ Falsification of Work Records | ☒ Other Poor Job Performance - Inappropriate Behavior |

### 4) Identify the duty(ies) which was breached/violated in accordance with Just Culture:

☒ Duty to Avoid Causing Unjustifiable Risk or Harm
☐ Duty to Follow a Procedural Rule (Unexcused Absence)
☐ Duty to Produce an Outcome (Attendance/Tardiness)

### 5) Supervisor expectations:

> There is an expectation that in her interactions with others, Ms. Luca has a duty to produce appropriate outcomes, adhere to the Beaumont Standards of Service and follow the Hospital's Code of Conduct guidelines.
>
> Ms. Luca is expected to perform her duties in a professional manner. Interactions with all individuals should occur with professionalism, mutual respect, discretion and proper conduct.
>
> When given specific direction by her leadership team to avoid discussing the matter with other staff members, there was an expectation that Ms. Luca would follow that direction.

**Beaumont | HEALTH SYSTEM**

## Performance Improvement Plan

**6) Check action given:**

☒ Level I - Performance Improvement Plan

☐ Level II - Performance Improvement Plan
   without Suspension

☐ Level II - Performance Improvement Plan
   with __ Day(s) Suspension – Dates: / /  to  / /

☐ Level III - Termination of Employment – Effective Date:  / /

**7) Employee background information:**

Beaumont's Harassment Policy outlines that "Prohibited harassment is conduct that may affect any term, conditions or benefit of employment; interfere unreasonably with an individual's work performance; or create an intimidating, hostile, or offensive working environment."

Beaumont's Code of Conduct states that "As part of our commitment to having a respectful and inclusive workplace of choice, we do not allow harassment or bullying. we consider harassment to include language or conduct, which may be derogatory, intimidating or offensive to others."

Conduct on the part of a Beaumont employee that is inappropriate or that impedes harmonious interactions and relationships shall not be tolerated.

**8) Consequences if the behavior/breach occurs again:**

Given Ms. Luca's reckless behavioral choice to disregard management's direction in this situation, she is being issued a Performance Improvement Plan Level I for Poor Job Performance - Inappropriate Behavior.

Ms. Luca is expected to show immediate improvement and discretion in her interactions with others. As a part of this Performance Improvement Plan, Ms. Luca will enter a 30-Day evaluation period, reviewing her behavior and performance. Once she has successfully completed the evaluation period, she will be expected to maintain this improved behavior and performance throughout the remainder of her employment with the Hospital.

Failure to meet these expectations will result in further progression through the Hospital's Performance Management Program Policy (#282), up to and including Termination of Employment with Beaumont Health.

**NOTE:**
- Receipt of two suspensions in an 18-month period of time will result in termination of employment.
- Employees in an active suspension will not be eligible for a salary increase for 18 months from the date of the incident.
- Licensed health care professionals will be reported to the State of Michigan Licensing Bureau in accordance with Michigan State law when suspension level and termination occurs.

I acknowledge that this discussion session has occurred, that my breach(es) has been reviewed with me, and I have received a copy of this form. I understand that my signature does not necessarily indicate that I agree with this action, only that I have received a copy of this form. I further understand that future breaches may result in additional disciplinary action up to and including discharge.

Rachel refused to sign    10-18-19        Original sent to HR ☐
Employee Signature        Date             Copy to Employee ☐
                                           Copy to Employee File ☐

This original Performance Improvement Plan will be maintained in the employee's personnel file in the Human Resources Department. All Level I, II and III Plans must have prior approval from the appropriate Administrator and the Human Resources Department.

_____  10-18-19    _____  10-10-18
Dept. Supervisor Signature  Date    Dept. Manager Signature  Date

_____  10/10/18    _____  10.10.18
Administrator Signature  Date    Human Resources Signature  Date

DEC 2013                                                    3

**Beaumont/Garcia 000355**