UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTINA GARCIA,

     Plaintiff,

v.

BEAUMONT HEALTH and
RACHEL LUCA,

     Defendants.

Case No: 19-11673

District Judge Linda V. Parker

Magistrate Judge David R. Grand

/

Lisa C. Ward (P38933)
Law Offices of Lisa C. Ward, PLLC
Attorney for Plaintiff
4131 Okemos Road, Suite 12
Okemos, MI  48864
517-347-8102
lisacward@aol.com

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.
By: Eric J. Pelton (P40635)
    Shannon V. Loverich (P53877)
Attorneys for Defendant Beaumont Health
280 N. Old Woodward Avenue, Suite 400
Birmingham, Michigan 48009
(248) 645-0000
epelton@khvpf.com
sloverich@khvpf.com

/

**DEFENDANT BEAUMONT HEALTH'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Before addressing the legal inadequacies of Garcia's response, it is necessary to address three misrepresentations Garcia repeatedly makes in connection with her claims: (1) Beaumont did nothing to protect or separate Garcia from Luca after her one and only harassment complaint; (2) Luca continued to follow Garcia around for months "harassing her" and calling her a liar; and (3) Garcia was forced to resign her Charge Therapist duties because of Luca's "continued harassment" and Beaumont's lack of responsive action. These allegations are patently false.

First, Garcia's claim that Beaumont did nothing to separate her from Luca is belied by her own deposition testimony. Garcia admittedly had *no interaction with Luca* after she lodged her single harassment complaint because Beaumont ensured they were never again paired on assignment in the four-tower, 37-floor hospital:

> Q.   Did you have any interaction with [Luca] after [the alleged assault] on July 30th?
> A.   No. I don't believe so.
> Q.   You were never paired with her again, were you?
> A.   I don't believe so. (ECF No. 72-2, PageID.964.)

Second, Garcia fabricates a scenario that Luca "continued to harass her for months" by following Garcia into her work area and telling coworkers that Garcia lied about her. *See*, Garcia's misrepresentations at ECF 73, PageID.1277, 1287, 1291, 1293. But Garcia testified that she overheard Luca talking to a coworker in Garcia's work area on only *one occasion*—September 2, 2019. (ECF 72, PageID.959-960.) And Garcia untruthfully laments that she was "continually

scheduled as Charge Therapist" while Luca was working and thus had to supervise her. Not true. Garcia was accidentally assigned Charge responsibilities *twice* when Luca was also assigned. Garcia's schedule was changed per her request on one occasion, and she worked the other without requesting a change—and without interacting with Luca. (ECF No. 72-2, PageID.964-965; ECF No. 72-6, PageID.1221.)

Third, Garcia claims her resignation from Charge Therapist duties was involuntary because she "was continually scheduled . . . as charge therapist on the night shift with Ms. Luca for . . . three months" and had to resign due to her fear that she would be "sexually assaulted [by Luca] again." (ECF 73-1, PageID.1301.) This is a farce. On February 28, 2019, Garcia submitted a voluntary resignation letter telling her management how much she had enjoyed the Charge responsibilities. (ECF 72-3, PageID.1087, 1092.) Luca was not even employed with Beaumont at the time—she had been fired three months earlier. (ECF 72-4, PageID.1095; ECF No. 72-2, PageID.1060-1061.)

**A. Garcia Failed To Establish a Viable Disparate Treatment Claim.** Garcia cites no case law supporting her bizarre theory that *Luca's discipline* can establish disparate treatment *of Garcia*. Even if it were a cognizable claim (it isn't), she has no evidence that a similarly situated male would have been terminated or treated any differently. Beaumont submitted unrefuted evidence that a male employee would not

2

be terminated where, as here, the investigation did not substantiate the accusations. (ECF 72-4, PageID.1096-1097.) Garcia's misrepresentation of what Ms. Carroll said *prior to her investigation* does not suggest that Luca was treated more favorably. It was Garcia who made a comment in the surreptitiously recorded conversation that *she* would have reacted differently if Luca were man. Ms. Carroll responded that the allegations would be sexual harassment if committed by a man *or a woman*. (ECF No. 72-2, PageID.1004.)

Garcia's claim that her resignation from Charge Therapist duties was an adverse job action is factually and legally wrong. She cites one inapplicable case, *Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 921 (6th Cir. 2014), where the court found that a voluntary transfer could constitute a materially adverse employment action if the "conditions of the transfer" were "objectively intolerable to a reasonable person."  In other words, the plaintiff had to establish a "constructive demotion." *Id.* There is no evidence that Garcia's Charge duties were "objectively intolerable" due to Luca when Luca had been terminated several months earlier.

**B. Garcia Cannot Establish Respondeat Superior Liability.** The string of sexual harassment cases cited by Garcia primarily focus on the "severe or pervasive" element of a hostile work environment claim—that is, whether harassment experienced *by others* can be considered in determining *the plaintiff's* environment. This is irrelevant because Beaumont's motion did not focus on the "severe or

3

pervasive" element given the nature of Garcia's allegation (alleged assault). Beaumont's argument focused on the "respondeat superior" element—*i.e.,* Beaumont cannot be liable where it took immediate action in response to Garcia's sexual complaint against Luca, and that action (investigation and counseling) unequivocally stopped Luca's alleged sexual harassment. (ECF 72, PageID.889-891.) Garcia does not address or respond to the facts or case law that confirm she cannot establish respondeat superior. (*Id*.) Instead, Garcia reverts back to misrepresenting the extent of her interactions with Luca after her complaint. (*See, supra,* pp. 1-2.) Garcia's post litigation dissatisfaction with the investigation or Luca's continued employment does not magically nullify Beaumont's appropriate and effective response. (ECF 72, PageID.890-891.)

Garcia also submits an eleventh-hour affidavit identifying, for the first time, alleged sexual comments attributed to Luca that she has suddenly become "aware of"—but never previously disclosed. (ECF 73-1.) Garcia then makes a conclusory inferential leap and declares that the allegations were "known to supervisors, including Antoinette Carroll," and speculates that Beaumont did not take prompt remedial action to the allegations. Garcia's affidavit does not meet the requirements of Fed.R.Civ.P. 56(e), and it does not support the necessary elements of her claim. It must be struck or disregarded. Garcia identifies no evidence to support her conclusory allegation that management was aware of these allegations. The evidence

establishes the opposite. Luca and Garcia primarily worked the midnight shift on weekends when there is no Respiratory Supervisor at the hospital. (ECF No. 72-2, PageID.919.) It is undisputed that Garcia never reported the allegations. (ECF 72-2, PageID.952, 991-992.) It is undisputed that no one else reported the allegations either. (ECF 72-4, PageID.1095-96; ECF 72-3, PageID.1088.) Garcia's conclusory allegations about what she thinks "management knew" must be struck. *See Lewis v. Philip Morris Inc.,* 355 F.3d 515, 533 (6th Cir. 2004) ("conclusory statements" unsupported by specific facts will not permit a party to survive summary judgment).[1]

Garcia's second declaration (ECF No. 73-1) doesn't establish that Luca was a "well known" sexual harasser either. In this affidavit, Garcia cherry picks excerpts from the transcript of her surreptitiously recorded conversation with Ms. Carroll. Ms. Carroll never said Luca had engaged in or been previously counseled for sexual misconduct. Ms. Carroll stated that Luca had been talked to about "different things." (ECF No. 72-2, PageID.1010.) And in her deposition, Ms. Carroll explained that those "things" involved Luca over-sharing and continually talking to uninterested

---

[1] The affidavit must also be disregarded because it based on hearsay about what others allegedly saw or told her about Luca. (¶¶ 1, 3, 4(a)). *See* Fed. R. Evid. 801(c); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (hearsay evidence cannot be considered on a motion for summary judgment). And Garcia's non-sexual allegations about Luca (¶¶ 4(e)-(g)) must be disregarded because they are entirely irrelevant to an Elliott-Larsen sexual harassment analysis. *Corley v. Detroit Bd. of Educ.,* 470 Mich. 274, 279 (2004) (actionable sexual harassment under Elliott-Larsen requires conduct or communication that *inherently* pertains to sex).

5

coworkers about her personal problems. (ECF No. 72-5, PageID.1149-1151.) There is no evidence Luca was known by management to engage in sexual misconduct that management ignored or failed to address.[2] Regardless, Garcia's sexual harassment claim fails because she cannot establish respondeat superior liability.

**C. Garcia Has Not Established a Viable Retaliation Claim.** Garcia acknowledges that coworker harassment can only be deemed an adverse employment action necessary to support a retaliation claim if it is sufficiently severe so as to dissuade a reasonable worker from making a charge of discrimination. Garcia claims she meets this standard by falsely claiming that she was "called a liar for weeks without consequence" and "continually harassed" when Luca came into her work area. (ECF 73, PageID.1293.) This, as discussed above at pp. 1-2, is an outrageous mischaracterization of the record. The undisputed facts are that Luca told three coworkers her side of the story (at the same time Garcia was telling co-workers her side of the story), and two of those coworkers told Garcia they did not believe Luca. (ECF 72, PageID.893-894.) Notably, Garcia *does not cite a single case* that supports her argument that this conduct is sufficiently severe to meet the threshold for actionable coworker retaliatory harassment. Nor does she refute or distinguish

---

[2] Contrary to the allegation in Garcia's affidavit (ECF 73-1, PageID.1306), there is no evidence that supervisors gave Luca the nickname "Crazy Rachel"—or that the nickname suggests Luca had a reputation for sexual misconduct. Garcia testified the department, including Garcia, referred to her as "crazy" because she is "interesting." (ECF No. 72-2, PageID.933.)

the law cited by Beaumont confirming that it doesn't as a matter of law. (*Id.*) Nor can Garcia establish that Beaumont condoned or encouraged Luca's conduct or responded so inadequately as to manifest indifference. The length of time between her complaint (Aug. 27) and the date of Luca's discipline was administered (Oct. 18) was due to Garcia's three weeks of vacation and FMLA when she told Beaumont that she was not available to discuss, followed by her refusal to meet with Beaumont unless she could bring her lawyer. (ECF No. 72-2, PageID. 966-968; ECF No. 72-4, PageID.1097.) Luca was also unavailable due to previously approved intermittent FMLA leave and absences, thus resulting in her discipline being administered 9 days after it was prepared. (ECF No. 72-7, PageID.1261, 1264-1266; ECF No. 72-6, PageID.1217-1218.) Beaumont did not ignore Garcia's complaint. Two members of management and HR immediately reached out to Garcia and then investigated— even when Garcia refused to cooperate. Beaumont could not administer Luca's discipline until she returned to work. Again, Garcia *does not cite a single case* to support her position that this conduct is the equivalent of tolerating, condoning or encouraging Luca's conduct.

KIENBAUM HARDY VIVIANO
 PELTON & FORREST, P.L.C.
By: */s/ Shannon V. Loverich*
Shannon V. Loverich (P53877)
280 N. Old Woodward Avenue, Suite 400
Birmingham, Michigan 48009
(248) 645-0000
Dated: November 17, 2020      sloverich@khvpf.com

7

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to upon all ECF participants.

*/s/ Shannon V. Loverich*
280 N. Old Woodward Ave.,
Suite 400
Birmingham, Michigan 48009
(248) 645-0000
sloverich@khvpf.com
(P53877)

394520