# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: October 07, 2022

Mr. Thomas J. Davis
Mr. Eric J. Pelton
Kienbaum, Hardy, Viviano, Pelton & Forrest
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI 48009

Mr. Jeremy D. Horowitz
U.S. Equal Employment Opportunity Commission
Office of General Counsel
131 M Street, N.E., Fifth Floor
Washington, DC 20507

Ms. Veronica Louise Stachurski
Ms. Lisa C. Ward
Ward Law
4131 Okemos Road, Suite 12
Okemos, MI 48864

Re: Case No. 22-1186, *Garcia v. Beaumont Health Royal Oak Hosp., et al.*
Originating Case No. : 2:19-cv-11673

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Sincerely yours,

s/Laurie A Weitendorf
Opinions Deputy

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0399.06

No. 22-1186

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Oct 07, 2022

DEBORAH S. HUNT, Clerk

KRISTINA GARCIA,

    Plaintiff-Appellant,

v.

BEAUMONT HEALTH ROYAL OAK
HOSPITAL; RACHEL LUCA,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
MICHIGAN

OPINION

Before: BATCHELDER, GRIFFIN, and KETHLEDGE, Circuit Judges.

**Alice M. Batchelder, Circuit Judge**. While working at Beaumont Health Royal Oak Hospital as a respiratory therapist, Kristina Garcia allegedly suffered sexual harassment and retaliation at the hands of a coworker, Rachel Luca. In response, Beaumont disciplined Luca and prevented the two of them from interacting again. But because Beaumont still scheduled Garcia to work the same shift as Luca on an infrequent basis, Garcia resigned in February 2019, and sued for employment discrimination. She claimed Beaumont's actions created a hostile work environment, that Beaumont discriminated against her based on her gender, and that it failed to prevent Luca from retaliating against her in the workplace. The district court granted Beaumont summary judgment on all of Garcia's claims, finding her work environment tolerable and Beaumont's response reasonable. We **AFFIRM**.

No. 22-1186, *Garcia v. Beaumont Health Royal Oak Hosp., et al.*

### I.      Factual Background and Procedural History

Garcia began working at Beaumont in 2011.  Respiratory therapists generally work in pairs throughout the hospital and report to four department-level supervisors during the day shift.  When a supervisor is not onsite (as is often the case during the midnight shifts of weekends or holidays), the charge therapist supervises the other respiratory therapists.  Charge therapists respond to staff needs and handle issues that arise during a shift.

#### A.  Sexual Harassment

Garcia and Luca worked together at Beaumont until December of 2018.  During the midnight shift of July 29-30, 2018, Garcia, Luca, and a third coworker, Colleen Kaye, chatted during a scheduled break about their bras and the varying qualities and styles.  Comparing bra types, all three women pulled out their bra straps to show the others.  Garcia alleges that while she was showing her bra strap, Luca suddenly walked over to Garcia, reached down Garcia's shirt, pinched her nipple, and pulled her breast out of her bra.  When Garcia angrily asked why Luca grabbed her breast, Luca stated, "well, you have nice nipples," and laughed.

Just over a week later, on August 6, Garcia complained to Antoinette Carroll, one of the day-shift supervisors, about the incident and recorded the entire conversation on her phone. During the conversation, the following exchange occurred,

> Garcia: "Because like I said Net [Antoinette Carroll], I'm really, if that was a man I would've hit him without thinking."

> Carroll: "Well, he would have been out of the job. He would have been gone. Because that's sexual harassment. And guess what? It's sexual harassment on her part, too."

At the conclusion of the conversation, Carroll asked Garcia to put her complaint in writing. Garcia did so and in her written complaint she asked to not be paired with Luca where they could be alone.

No. 22-1186, *Garcia v. Beaumont Health Royal Oak Hosp., et al.*

A week later, on August 13, Carroll interviewed Kaye and Luca separately to learn more about the incident. While she initially believed Garcia's accusation, after completing her interviews with Luca and Kaye, Carroll concluded the accusation was unsubstantiated. Both Luca and Kaye claimed the alleged assault did not occur, while Luca explained that she accidentally touched Garcia while examining her bra strap–nothing more. Luca further claimed that Garcia not only made up the accusation but began discussing it with others in the staff room. Despite her findings, Carroll still warned Luca, prohibiting her from any inappropriate conversations, behavior, or touching of Garcia. Carroll also prohibited Luca from speaking about the incident with anyone. Garcia reported no issues of sexual harassment after the July 29-30 incident, and does not claim that Luca ever sexually harassed her again. In fact, other than a brief attempt at conversation on October 27 in which Garcia walked away before Luca could speak to her, Garcia never interacted personally with Luca at all after the July incident.

### B. Retaliation

On August 27, 2018, Garcia complained to Carroll, claiming Luca retaliated against her by telling coworkers that Garcia lied about the incident and made up her story to get Luca fired. Garcia noticed during this time that coworkers did not want to be in a room alone with her anymore and attributed it to Luca's gossip.

Beaumont immediately acted on the complaint, attempting without success to reach Luca by telephone almost every day from August 27 through August 31. No one was able to reach Luca until September 7, when a supervisor located her in-office and interviewed her. After concluding that Luca had violated Carroll's directive to keep the complaint confidential, Beaumont disciplined Luca, putting her on a performance enhancement plan on October 18, 2018.

No. 22-1186, *Garcia v. Beaumont Health Royal Oak Hosp., et al.*

### C. Scheduling Complaints and Garcia's Resignation

Garcia alleges that, contrary to her wishes, Beaumont scheduled her as charge therapist while Luca was on shift a total of five times between October 13 and December 9. While Beaumont did technically schedule her for those shifts (although never paired in a two-person group), Garcia worked as charge therapist with Luca under her supervision only one of those five times. During that shift, Garcia did not interact with Luca at all.

During the first week of December, Luca did not show up to work, leading Beaumont to terminate her employment. On December 13, 2018, Garcia learned that Luca had been arrested and sent to jail, confined for a period of two to three months. Sometime around February of 2019, Garcia began hearing rumors that Luca would both be released from jail soon and would resume her employment at Beaumont. This fear, combined with Garcia's perception that her request to not be scheduled with Luca had not been honored in the past, caused her to resign her position on February 28, 2019.

### D. Procedural History

On June 6, 2019, Garcia filed this lawsuit alleging sex discrimination, sexual orientation discrimination, and retaliation. She later amended her complaint and added Michigan Elliot-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 *et seq.*, claims. Her amended complaint stated all claims against Beaumont and an ELCRA retaliation claim against Luca. Luca failed to defend herself against the suit and Garcia moved for default judgment. Beaumont objected and the district court, to avoid inconsistent judgments, denied Garcia's motion for default judgment without prejudice until her claim against Beaumont could be heard on the merits. When Beaumont moved for summary judgment, the court granted the motion.

4

No. 22-1186, *Garcia v. Beaumont Health Royal Oak Hosp., et al.*

After summary judgment, Garcia renewed her motion for default judgment as to Luca, while Beaumont moved for a bill of costs to be taxed for various litigation expenses. Garcia objected to the bill of costs. The district court denied plaintiff's motion for default judgment against Luca, sua sponte dismissed Luca from the case with prejudice, denied Garcia's motion for review of the bill of costs, and affirmed the bill of costs.

Garcia appeals the district court's grant of summary judgment, its sua sponte dismissal of Luca from the case, and its affirmance of the bill of costs.

## II. Legal Standard

We review the district court's grant of summary judgment de novo. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020). Summary judgment is appropriate when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *Id.*; *see also* Fed. R. Civ. P. 56. We view all evidence and draw reasonable inferences in favor of the non-moving party. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). Any evidence submitted in opposition to a motion for summary judgment must be admissible. *Id.*; *see also* Fed. R. Civ. P. 56(e)(2).

The order to affirm the bill of costs is reviewed for abuse of discretion. *Singleton v. Smith*, 241 F.3d 534, 538 (6th Cir. 2001).

## III. Discussion

Garcia raises five issues on appeal. She claims the district court erred by 1) granting summary judgment on her hostile-work-environment claims, 2) granting summary judgment on her disparate-treatment claim, 3) granting summary judgment on her retaliation claims, 4) sua sponte dismissing Luca as a defendant, and 5) affirming Beaumont's taxed bill of costs. All five lack merit.

5

No. 22-1186, *Garcia v. Beaumont Health Royal Oak Hosp., et al.*

### A. Hostile Work Environment

Garcia argues the district court erred by granting summary judgment on her hostile work environment claims. She brings these claims under both Title VII of the 1964 Civil Rights Act and the ELCRA. Both the Sixth Circuit and the Michigan courts interpret the ELCRA using Title VII case law. *Wasek v. Arrow Energy Services, Inc.*, 682 F.3d 463, 468 (6th Cir. 2012). And, for the purposes of her hostile work environment claim, the legal standards are the same. *Id.*

To prevail on her hostile-work-environment claim, Garcia must show 1) she is a member of a protected class, 2) she experienced unwelcome sexual harassment, 3) the harassment was based on sex, 4) the harassment created a hostile work environment, and 5) her employer is liable. *Doe v. City of Detroit, Mich.*, 3 F.4th 294, 300 (6th Cir. 2021). Under the fourth prong, Garcia must demonstrate, based on the totality of the circumstances, that the harassing conduct was sufficiently severe or pervasive to alter the terms and conditions of her employment. *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 309 (6th Cir. 2016) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Under the fifth prong, Garcia must show that Beaumont "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Doe*, 3 F.4th at 301 (quotation marks omitted). The employer's response must "manifest indifference or unreasonableness in light of the facts the employer knew or should have known." *Id.* (citation and brackets omitted). An employer's response is reasonable if it is "reasonably calculated to end the harassment." *Id.* (citation omitted).

Although Beaumont claims Garcia's allegations are unsubstantiated, Beaumont does not, for the purposes of this appeal, argue as a factual matter that Garcia was never sexually harassed. Nor does it argue that the harassment Garcia experienced was not severe or pervasive enough to

No. 22-1186, *Garcia v. Beaumont Health Royal Oak Hosp., et al.*

create a hostile work environment. Rather, Beaumont argues only the employer liability prong, contending that its response to Garcia's complaints precludes her claim. We agree.

Employers are not strictly or even derivatively liable for a coworker's sexual harassment. *See Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 50 (6th Cir. 1996). Any liability employers face flows from their own negligence in responding to complaints of harassment. *Id.*; *see also Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 340 (6th Cir. 2008). Therefore, the relevant inquiry is not whether Garcia experienced harassment at the hands of a Beaumont employee or even whether she subjectively felt dissatisfied or offended by Beaumont's handling of her complaint. Rather, the inquiry is whether Beaumont's conduct in response to Garcia's complaint was objectively reasonable under the circumstances.

Any reading of the record confirms that Beaumont's response was objectively reasonable, as it was "reasonably calculated" (indeed, decisively successful) to end harassment. *See Doe*, 3 F.4th at 301. Beaumont promptly responded to Garcia's complaints. After Garcia's initial complaint to Carroll on August 6, Carroll interviewed Luca and Kaye on August 13, just one week later. Even though Carroll concluded that Garcia's allegations were unsubstantiated, she nonetheless decided to issue a warning to Luca. Carroll then urged Garcia to report any more sexual harassment. Garcia reported none. What's more, Garcia admits she did not ever interact with Luca after July 30 (other than Luca's passing comment to Garcia on October 27) because Beaumont never paired them to work together again. While these actions would be objectively reasonable under most circumstances, they are even more so here because Garcia admits the sexual harassment *did* end.[1] *See Fleenor*, 81 F.3d at 51 ("Even if the conduct alleged up to that time

---

[1] Garcia claims that Luca continued to harass her by "telling numerous coworkers that she lied to get her fired." However, this is exactly the same basis for her retaliation claims. Retaliation and sexual harassment create distinct

7

No. 22-1186, *Garcia v. Beaumont Health Royal Oak Hosp., et al.*

could support a claim under Title VII, the company's action was sufficient to stop [the harassment] and to relieve itself of liability.").

Garcia counters that Beaumont acted unreasonably for two additional reasons: 1) Luca had repeatedly harassed others in the past, Beaumont knew of this behavior, and did nothing; and 2) Beaumont scheduled Garcia to work as charge therapist while Luca worked the same shift. Neither saves her claim.

To support her first reason, Garcia attempts to resuscitate an affidavit which the district court discredited below. In that affidavit, Garcia claims Luca engaged in questionable behavior on several prior occasions, ranging from exposing her midsection, smacking coworker's behinds (consensually), and discussing vulgar details of her sex life. She then speculatively asserts this conduct was "well known to supervisors."

The district court rightly rejected this argument. After citing Fed. R. Civ. P. 56 which requires any affidavit opposing a summary judgment motion to set out facts which would be admissible in evidence, the district court concluded the affidavit contained assertions to which Garcia would not be competent to testify at trial. *Garcia v. Beaumont*, No. 19-11673, 2021 WL 4951668 at *12 (E.D. Mich. Oct. 25, 2021). And the Court stated that Garcia provided no basis to support her claim that Beaumont somehow "knew" of the alleged conduct. *Id.*

Garcia does not meaningfully challenge this ruling on appeal. She claims the district court wrongfully dismissed her testimony because it was "sworn" and based on personal observations. However, merely claiming the incidents described in the affidavit were based on personal observation does not change the language of the affidavit which lists several incidents of which

---

legal claims and Garcia cannot use purported retaliatory harassment as evidence of the sexual harassment element of a hostile work environment.

No. 22-1186, *Garcia v. Beaumont Health Royal Oak Hosp., et al.*

she clearly had only second-hand knowledge.  R. 73-1, PageID.1305 ("When Ms. Seog informed me of this incident she told me she was offended and appalled…Ms. Luca also sent nude pictures of herself to a coworker…Ms. Luca also brought in peppermint essential oil and put the oil in a respiratory therapist's eye, which resulted in blurry vision and his eyes burning…").  Because the district court correctly concluded that this affidavit did not lay out facts that could create a genuine issue of material fact, we do not consider it and are left with the undisputed record showing that Beaumont received no complaints of Luca's committing sexual harassment prior to August 6, 2018.  And, as just explained, Beaumont's response to that complaint was reasonable.

Garcia's second theory fares no better.  She argues that Beaumont's response was unreasonable because it failed to separate or suspend Luca, and cites two cases in support, namely *Hawkins* and *Smith*.  However, both perpetrators in those cases had a history of harassment known to the employer, and the employer either failed to separate harasser and victim at all or failed to issue any disciplinary warning.  *See Hawkins*, 517 F.3d at 327-31, 341-44 (failure to discipline); *Smith*, 813 F.3d at 303-04, 311-12 (failure to separate at all).  Here, Beaumont did both. Beaumont never paired Garcia and Luca to work together after Garcia's complaint, and it warned Luca against any inappropriate behavior.  While Beaumont did schedule Garcia as charge therapist while Luca worked the same shift, this does not show that Garcia had to work with Luca, as she only had a loose supervisory role and did not interact with Luca in this capacity.

Ultimately, Garcia's claim is that Beaumont is liable because Garcia was offended by Luca's presence at the hospital.  Her being offended, however, does not render Beaumont's response unreasonable.[2]  *See Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 749

---

[2] We pause to make clear that while Beaumont undoubtedly responded in a manner sufficient to preclude liability, we do not hold that its chosen course was necessarily *required*. Consider the factual context of Garcia's argument: Beaumont concluded, after an investigation that included interviews of all witnesses (including third party witnesses)

No. 22-1186, *Garcia v. Beaumont Health Royal Oak Hosp., et al.*

(6th Cir. 2008). Because Beaumont acted reasonably in its response to Garcia's complaints, the district court did not err in granting summary judgment on her hostile work environment claims.

### B. Disparate Treatment Claims

Garcia next argues that Beaumont discriminated against her under a disparate-treatment theory. In order to present a prima facie case for disparate treatment under Title VII, the plaintiff must demonstrate that 1) she is a member of a protected group, 2) she was subject to an adverse employment action, 3) she was qualified for her position, and 4) she was treated differently than a similarly situated employee outside the group. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008).

Garcia's disparate treatment claim is oddly cast. At the outset of her argument, she states her claim is "based on the fact that [Garcia's] complaint of sexual harassment would have been treated differently by [Beaumont] if she was not a bi-sexual woman being sexually harassed by another woman." As to how her claim was treated differently, Garcia explains, "Carroll stated that if the sexual harassment would have been between a man and a woman the man would lose his job." Beyond this alleged disparity, her brief makes no reference as to how the factual record satisfies the disparate treatment prima facie case nor does Garcia explicitly detail what adverse employment action was levied against her.

Construing her brief as best we are able, we read Garcia's disparate treatment claim to lie in two alleged adverse employment actions: 1) the manner and result of the investigation itself, and 2) constructive discharge stemming from Beaumont's scheduling. We address each in turn.

---

to the incident, that Garcia's allegations lacked foundation. Garcia's demand that Beaumont suspend or otherwise remove Luca implies that allegation alone bestows the right on an employee to demand employer discipline on a coworker and that failure to impose such discipline creates liability. It does not.

No. 22-1186, *Garcia v. Beaumont Health Royal Oak Hosp., et al.*

### 1. Adverse Employment Action

To demonstrate an adverse employment action, an employee must show a "materially adverse change in the terms and conditions of a plaintiff's employment." *Deleon v. Kalamazoo Cnty. Road Com'n*, 739 F.3d 914, 918 (6th Cir. 2014) (citation omitted). This materially adverse change typically comes in the form of a changed employment status, such as hiring, firing, failing to promote, reassignment, or a change in benefits. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014). "Mere inconvenience or an alteration of job responsibilities" is insufficient to demonstrate an adverse employment action. *Deleon*, 739 F.3d at 918 (quotation marks omitted).

### i. Inadequate Investigation Theory

Garcia claims Beaumont is liable under a disparate-treatment theory because it would have allegedly handled her complaint differently had she complained about the actions of a male. She alleges this not because the investigation *failed* in any meaningful way (neither party disputes that not a single incident of sexual harassment occurred after the investigation), but because it might have gone *differently* but for her gender or sexual orientation. Putting aside the empirical claim that it would have gone differently based on gender or sexual orientation (which Beaumont disputes), the inescapable legal implication of this argument is that an employer's dealings with a coworker, even when that coworker has ceased all harassment, can constitute an adverse employment action against another employee. This claim is novel, has no basis in law, and would have far-reaching consequences for employer liability.

First, this court has repeatedly held that employer liability for coworker harassment requires a change in the terms and conditions of employment. *See, e.g.*, *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 872 (6th Cir. 1997) (requiring plaintiff to show, on a coworker harassment theory, that "the harassment unreasonably interfered with her work performance and

11

No. 22-1186, *Garcia v. Beaumont Health Royal Oak Hosp., et al.*

created a hostile work environment"); *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 830 (6th Cir. 1999) (same); *Hawkins*, 517 F.3d at 332 (same); *Doe*, 3 F.4th at 300 (same).

Second, while some of our cases provide support for the notion that an employer can be liable for failing to impose discipline on a coworker, they predicate liability on the *failure* of the investigation or response to dissuade harassment. *Hawkins*, 517 F.3d at 341-42 (employer could be liable because it did not discipline employee after a cursory investigation failed to stop serial sexual harassment); *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999) (employer could be liable for making "no effort" to investigate source of racial graffiti); *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 817 (6th Cir. 2013) (employer could be liable for failing to investigate pervasive harassment at all); *cf. Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) (laying out employer affirmative defense for harassment claims and requiring that the employer exercise reasonable care to "prevent and correct promptly" any sexual harassment).

Third, the inverse of this rule, that an employer response that *does* prevent harassment precludes liability, has been implied in several cases. *Fleenor*, 81 F.3d at 51 ("Even if the conduct alleged up to that time could support a claim under Title VII, the company's action was sufficient to stop [the harassment] and to relieve itself of liability."); *Doe*, 3 F.4th at 304 (employer response reasonable given that moving alleged perpetrator and disciplining him "ended the harassment."); *Mullins*, 291 F. App'x at 749 ("Goodyear responded reasonably to end the harassment, thus meeting its obligations under Title VII."); *Gwen v. Reg'l Transit Auth.*, 7 F. App'x 496, 501-502 (6th Cir. 2001) (no employer liability because it suspended harasser and no further harassment occurred). These cases make sense because employer liability based on workplace harassment is rooted in the notion that the harassment itself changes the terms and conditions of the victim's employment. *Harris*, 510 U.S. at 21 (Title VII is violated "[w]hen the workplace is permeated

12

No. 22-1186, *Garcia v. Beaumont Health Royal Oak Hosp., et al.*

with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment . . . .") (internal citations and quotations omitted).

The cumulative import of these principles is as uncontroversial as it is damning to Garcia's claim. Absent continued harassment, Garcia cannot prevail on her disparate treatment claim because the terms and conditions of her employment have not been adversely affected. In other words, Title VII affords Garcia no right to dictate her employer's dealings with a coworker who is no longer harassing her. *See Blankenship*, 123 F.3d at 874. Therefore, because Beaumont's decision to not fire Luca was not in any way "adverse" to Garcia, Garcia cannot make a prima facie case on the basis that Luca was treated differently than she would have been if she were a man.

## ii. Constructive Discharge

Garcia's second theory of adverse employment action lies in the constructive discharge doctrine. In cases where an employer has taken no formal action against the plaintiff, the plaintiff can still meet the adverse employment action prong by showing she was constructively discharged. An employee is constructively discharged when 1) her employer deliberately created working conditions so intolerable or difficult that a reasonable person in her shoes would feel compelled to resign, and 2) the employer did so with the intention of forcing the employee's resignation. *Laster*, 746 F.3d at 728. The Court examines the working conditions through an objective lens, not asking whether *plaintiff herself* felt compelled to resign, but whether a reasonable person would feel such compulsion. *See id.*

The district court, citing *Logan v. Denny's, Inc.*, 259 F.3d 558 (6th Cir. 2001), found that no reasonable juror could conclude that Beaumont deliberately created an intolerable working environment for Garcia. *Garcia*, 2021 WL 4951668 at *8. Garcia does not challenge this

13

No. 22-1186, *Garcia v. Beaumont Health Royal Oak Hosp., et al.*

reasoning or finding on appeal.[3]  Rather, Garcia claims the district court factually misstated how many times Garcia was scheduled as charge therapist with Luca on shift, ignoring three December shifts.

Whether scheduled as charge therapist two or five times, neither scenario created intolerable working conditions.  Luca did not sexually harass Garcia at all after the July incident and the two were never paired together after Garcia's initial complaint.  What's more, Luca had not even worked at Beaumont for over *two months* before Garcia resigned.  As a matter of law, no reasonable person would feel compelled to resign under these circumstances.

Because Garcia did not experience any adverse employment action and was not constructively discharged, we need not delve into whether she was disparately treated compared to someone outside the protected group.

### C.  Retaliation Claims

Garcia claims that Beaumont violated the ELCRA and Title VII retaliation provisions because of its alleged failure to prevent Luca's retaliatory harassment.  Once again, the standards for retaliation liability under both statutes are the same.  *See White v. Dep't of Transp.*, 964 N.W.2d 88, 97-98 (Mich. Ct. App. 2020) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006), as the ELCRA legal standard).

Title VII prohibits an employer from retaliating against any employee who makes a charge of discrimination.  *See* 42 U.S.C. § 2000e-3(a).  Building on case law interpreting that provision, this court recognized liability under a coworker retaliation theory in *Hawkins*.  A plaintiff can

---

[3] The EEOC, as amicus, claims the *Logan* "deliberateness" or intent requirement for the constructive discharge doctrine was abrogated by the Supreme Court in *Green v. Brennan*, 578 U.S. 547 (2016). Garcia did not raise this issue on appeal and so we decline to address it. Amicus may not insert into litigation legal issues not raised by the parties. *See Self-Insurance Inst. of Am., Inc. v. Snyder*, 827 F.3d 549, 560 (6th Cir. 2016). In any event, it is not clear that the EEOC is correct regarding the purported change in the constructive discharge standard. *See Tchankpa*, 951 F.3d at 816.

14

No. 22-1186, *Garcia v. Beaumont Health Royal Oak Hosp., et al.*

make a prima facie case of employer liability based in coworker retaliation if, "(1) the coworker's retaliatory conduct is sufficiently severe so as to dissuade a reasonable worker from making or supporting a charge of discrimination, (2) supervisors or members of management have actual or constructive knowledge of the coworker's retaliatory behavior, and (3) supervisors or members of management have condoned, tolerated, or encouraged the acts of retaliation, or have responded to the plaintiff's complaints so inadequately that the response manifests indifference or unreasonableness under the circumstances." *Id.* at 347. But liability must be limited to "appropriate circumstances" to ensure "employers are held liable for only their own indifferent or unreasonable behavior." *Id.* at 346-47.

A review of our case law confirms that this claim is not easily established. To date, we could only identify two[4] cases in which this court reversed summary judgment for a coworker's retaliatory conduct—both involving egregious circumstances. In *Hawkins* itself, the coworker (the target of numerous sexual harassment complaints) set fire to one woman's car and another's house after they had lodged complaints with management. *Id.* at 347-49. In *Szeinbach v. Ohio State University*, 493 F. App'x 690 (6th Cir. 2012) (Table), the coworker, a member of the College of Pharmacy faculty, maliciously reported the plaintiff to the university for alleged research misconduct regarding two of her academic publications. *Id.* at 694. He then spread these false reports to multiple faculty members at other universities, including a prospective employer who, after receiving his email, ceased all discussions of future employment with the plaintiff. *Id.* at 695.

Garcia attempts to extend this doctrine to workplace gossip. She engages in factual nitpicking and claims the district court misstated how many times Luca discussed the July incident

---

[4] *Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014), briefly cited the coworker retaliation standard but then proceeded to base its holding entirely on actions taken by the plaintiff's employer directly. *See id.* at 732.

No. 22-1186, *Garcia v. Beaumont Health Royal Oak Hosp., et al.*

with coworkers. But this microscopic focus does not change the fact that the worst "retaliatory" conduct ever alleged is Luca's telling other coworkers that Garcia lied and made up her story. As a matter of law, this type of conduct is not sufficiently severe to dissuade a reasonable person from lodging a complaint. Because we conclude that Luca's conduct was not sufficiently severe to constitute retaliation, we need not discuss whether Beaumont condoned or tolerated her behavior.

### D. Dismissal of Luca as Defendant

Garcia claims that because Luca was in default, the district court erred when it sua sponte dismissed her as a defendant. She cites out-of-circuit cases to support her claim that joint-and-several liability is not a reason to dismiss Luca from the case when she is in default. But the district court dismissed Luca because, in granting summary judgment to Beaumont, it had held that Luca's "retaliatory" conduct was not severe, and that conclusion precluded Garcia from prevailing on her retaliation claim against Luca. We also find Luca's conduct was not severe. Therefore, the district court did not err by dismissing Luca.

### E. Bill of Costs

Garcia argues that the district court erred by affirming the taxation of costs against Garcia for deposition transcripts and other miscellaneous fees. Garcia claims Beaumont cited one of her depositions only once in its reply brief and that the court reporter charged a fee in excess of Michigan state law. Federal procedural law governs federal court and Beaumont used Garcia's deposition in the case, which is all the Bill of Costs Handbook requires. The district court did not abuse its discretion.

### CONCLUSION

For all the reasons stated above, we **AFFIRM** the judgment of the district court.

16

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 22-1186

KRISTINA GARCIA,

     Plaintiff - Appellant,

     v.

BEAUMONT HEALTH ROYAL OAK HOSPITAL;
RACHEL LUCA,

     Defendants - Appellees.

```
┌─────────────────────────────┐
│          FILED              │
│       Oct 07, 2022          │
│   DEBORAH S. HUNT, Clerk     │
└─────────────────────────────┘
```

Before:  BATCHELDER, GRIFFIN, and KETHLEDGE, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____

Deborah S. Hunt, Clerk